569 F.2d 1074
 16 Fair Empl.Prac.Cas. 745, 15 Empl. Prac.
Dec. P 8089
Earl A. LOVE, on behalf of himself and all others similarly
situated, Plaintiffs-Appellees, Cross-Appellants,
v.
The PULLMAN COMPANY, an Illinois Corporation, Defendant-Appellant.
 Nos. 76-1993 to 76-1995.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Sept. 29, 1977.
Decided Jan. 26, 1978.
 
 Hugh J. McClearn, of Conover, McClearn & Heppenstall, P.C., Denver, Colo., James L. Hudson and Richard A. Penna, of Hudson & Leftwich, Washington, D. C. (Willie L. Leftwich, Ronald C. Jessamy and Louis J. Ebert, Washington, D. C., and Jack Greenberg, N.A.A.C.P. Legal Defense and Education Fund, Inc., New York City, of counsel, with them on the briefs), for appellees.
 Mary-Helen Mautner, Atty., E.E.O.C., Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, and Charles L. Reischel, Asst. Gen. Counsel, E.E.O.C., Washington, D. C., with her on the brief), for amicus curiae, Equal Employment Opportunity Commission.
 Before LEWIS, Chief Judge, SETH, Circuit Judge, and BRIMMER, Chief Judge.*
 SETH, Circuit Judge.
 
 
 1
 These appeals have been taken from a judgment which held that The Pullman Company had violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq. As the remedy, the court directed the payment of back pay to the plaintiff class based on a formula contained in the judgment. The matter was referred to a master for the computation. Some of plaintiffs have cross-appealed as to some elements of the back-pay formula, and as to the makeup of the class.
 
 
 2
 We conclude, contrary to contentions of some of the parties, that the judgment of the trial court is final and appealable. All issues are disposed of and only the matter of computation of back pay remains to be accomplished. This computation is a ministerial function. This is not a Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435, situation.
 
 The Violation:
 
 3
 We conclude that the evidence clearly demonstrates a violation of Title VII. The basic finding of the trial court was that the plaintiff class, those porters who had been designated by Pullman as "porters-in-charge," and who so acted, performed duties which were "essentially" or "substantially" similar to the duties performed by Pullman conductors. The porters and porters-in-charge were at all material times black employees while the Pullman conductors were always white. The trial court's finding as to the similarity of duties is supported by the evidence.
 
 
 4
 The only difference between the duties performed by porters-in-charge and conductors is one of supervision over porters. The record shows that this was a difference of small degree at best, but more importantly was a purely theoretical difference. No added training was required for the porters-in-charge once qualified. The final authority on the train, in any event, was the train conductor.
 
 
 5
 Pullman, from the effective date of the 1964 Civil Rights Act until some three and one-half years later when the company ceased to operate, continued the separate job classifications referred to above which adversely affected the black porters who acted as porters-in-charge. This was a situation which could and should have been terminated by the combination of the two classifications into one with the necessary merger or integration of seniority lists. The matter was thus not one of promotion into the conductor classification and thus was not dependent upon positions in that classification.
 
 
 6
 The violation of Title VII was thus established, and in spite of Pullman's declining business, the violation could have been prevented.
 
 The Remedy:
 
 7
 It is apparent that back pay is a suitable remedy under these circumstances and well within the discretion of the trial court. Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280.
 
 
 8
 The application of this remedy as made by the trial court is a reasonable attempt to restore those discriminated against to a position as nearly as is now possible to that they would have attained had there been no discrimination. It, in fact, appears to be the only possible device under these circumstances. It is apparent from the record that all porters acting in-charge lost pay for the time they acted as conductors and were not so paid.
 
 
 9
 All porters who were designated by Pullman as "porters-in-charge" did not work as in-charge all of the time. They also worked as regular porters. Had the two job classifications of porters-in-charge and Pullman conductors been combined, the state of Pullman's business was such that all persons in the combined group would not have worked the maximum number of hours permitted. Under the circumstances here presented it is not possible to reconstitute with any accuracy the individual opportunities of the members of the class. The solution devised by the trial court to take into consideration all the variables, and the several undeterminable factors was to use averages derived from both the prevailing job classifications. It is clear that each member of the class was adversely affected by the job classifications.
 
 
 10
 The group designated as "porters-in-charge," and who so acted during the critical period, is clearly defined and can be identified. There are about 1,500 persons in this class. Under the Pullman job classifications this group had been designated by Pullman to perform the in-charge duties. They were, under company rules, supposed to be prepared to so act at any time the company needed them to act. These persons were also those who had indicated an interest in being so designated and were ready, willing, and able.
 
 
 11
 Each member of the class was harmed. There was no showing under Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396, that any member of the class would have received less under the combined classification. Under these circumstances, and in view of the impossibility of reconstructing the relationship of the members in the combined classification, and relating to the available runs, the use of averages derived from the separate classifications is a reasonable basis for a back-pay formula. See Stewart v. General Motors Corp., 542 F.2d 445 (7th Cir.); Sabala v. Western Gillette, Inc., 516 F.2d 1251 (5th Cir.); and Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir.).
 
 The Trial Court's Formula:
 
 12
 The trial court compared the earnings of porters-in-charge to the average scale of senior conductors. Thus the court used the average annual wage, and monthly wage, received by senior porters and added the dollar amount that porters-in-charge were paid when so acting. (This dollar amount was on the assumption that they so acted for a month ($32.50) or for a year ($390.00)). This total in the formula is then deducted from the conductor average figure to arrive at the differential. The conductor average was not an amount senior conductors actually received but was the scale figure for the lowest conductor category. There was included as a separate element a readjustment of severance pay allowances for the class. Any adjustment of retirement benefits was left to the Railroad Retirement Board.
 
 
 13
 We find the formula to be reasonable, and see no defect in using averages, nor in the use of actual payments on one side and scale on the other. The reasons are explained, and again are a reasonable adjustment for the fact that all in the combined classification would not have worked the maximum time or as many hours as conductors worked. There are present several now indefinable factors and variables which at best can only be approximated, and were by the method used. Considered overall as a suitable remedy, it must be approved.
 
 
 14
 The definition or qualification for the members of the class was arrived at by all concerned during the course of the proceedings and adequate notices were sent. There is no basis now for change in the definition as urged on this appeal by some of the plaintiffs.
 
 
 15
 The Pullman Company moved to have several unions joined as parties, but we find no error in the denial of the motion by the trial court. The company also objects to the order of the trial court preventing further distribution of its assets on dissolution until the judgment is carried out. This is in our view a reasonable application of the powers of a court in an equitable action to protect its jurisdiction and to have its judgment carried out. Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189.
 
 
 16
 The plaintiffs urge that the trial court should not have required the class members to file "claims" for back pay under the formula. We find no error in this requirement in view of the time which has elapsed since employment was terminated. This matter is well within the discretion of the trial court.
 
 
 17
 We have examined the other points raised, including prejudgment interest, and no comment as to them is indicated.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Of the District of Wyoming, Sitting by Designation