Christine LAVROV, Plaintiff,

v.

NCR CORPORATION, et al., Defendants.

No. C–3–82–275.

United States District Court, S.D. Ohio, W.D.

April 20, 1984.*

* This opinion, previously published at 591 F.Supp. 102, is republished to reflect corrections made in the appearances of counsel.

Kathryn Olson, Jane M. Picker, Cleveland, Ohio, Randal S. Bloch, Cincinnati, Ohio, Judith E. Kurtz, Nancy L. Davis, Donna Hitchens, San Francisco, Cal., for plaintiff.

Janet K. Cooper, Dayton, Ohio, for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; ORDER BIFURCATING ISSUES FOR TRIAL; CONFERENCE CALL SET TO DETERMINE IF EXISTING TRIAL DATE CAN BE MET ON NARROW ISSUE SET FORTH BELOW OR, IN THE ALTERNATIVE, TO SET NEW TRIAL DATE ON BIFURCATED BASIS

RICE, District Judge.

In 1976, Defendant NCR Corporation ("NCR") employed Plaintiff Christine Lavrov as a system support analyst at its San Francisco office. During November, 1976, Plaintiff served as a guide and interpreter for a visiting Soviet delegation. Subsequently, Plaintiff began pursuing employment with NCR's International Division where she could use both her computer related skills and her fluency in Russian. To this end, Plaintiff sought employment with Defendant NCR GmbH ("NCR GmbH"). NRC GmbH is a German corporation, a wholly owned subsidiary of NCR, whose principal place of business is Augsburg, Germany.

In January, 1977, Plaintiff wrote Mr. Erwin Pruditsch, General Manager of NCR GmbH, to inquire about employment opportunities with the company. Initially, Plaintiff received no response. However, after Mr. Clarke E. Reynolds, NCR Vice President, Europe, intervened, Plaintiff received a response from Pruditsch. Plaintiff was

not offered a position. Plaintiff continued to correspond with Pruditsch and Reynolds regarding her qualifications and the availability of a position for her with NCR GmbH. She received a variety of explanations why no such position was available. Ultimately, Plaintiff came to the conclusion that the real reason she was not offered employment with NCR GmbH was her sex. Consequently, Plaintiff initiated this action, alleging that NCR and NCR GmbH discriminated against her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1]

This cause is before the Court on two discovery related motions, as well as upon Defendants' motion for summary judgment. The Court will address the discovery related motions first. Then, it will turn to the motion for summary judgment.

Plaintiff has filed a motion to request production of documents prior to the expiration of thirty days (Doc. # 19). As the thirty days has expired, the Court hereby overrules said motion as moot.

Defendants have filed a motion to strike (Doc. # 21) Plaintiff's requests for production of documents and notices of deposition. Defendants argue that Plaintiff filed these in contravention of Local Rules 4.7.1 and 4.7.3. Even assuming that Defendants' basic premise is correct, the Court is convinced that Defendants' motion must be overruled. Defendants do not assert that they were prejudiced by Plaintiff filing these discovery requests. Indeed, the Local Rule does not purport to relieve a party of its obligation to comply with Rules 26–37 of the Federal Rules of Civil Procedure. The Court is unable to conclude that Plaintiff's filings have in any way impeded discovery. To grant Defendants' motion would subvert the purpose of the Local Rules. The purpose of the Local Rules was to require counsel to endeavor to re-

solve discovery disputes extrajudicially. Sustaining Defendants' motion would subvert this salutary purpose. Such a result would encourage the filing of motions which, contrary to the intent of the Local Rules, would require the Court to become involved in resolving disputes. The ultimate resolution of such a motion would have *no* impact on the outcome of discovery or upon the ultimate result of the case. Accordingly, Defendants' motion to strike is overruled.

As stated above, this action is also before the Court on Defendants' motion for summary judgment (Doc. # 11), together with various memoranda in support and in opposition to the motion (Docs. # 12, 30, 32, 33). In support of their motion for summary judgment, Defendants raise four distinct arguments, two of which apply to each Defendant: (1) Plaintiff's complaint fails to state a claim against NCR; (2) NCR is not an "employment agency" within the meaning of Title VII; (3) this Court lacks personal jurisdiction over NCR GmbH; and (4) NCR GmbH is not an "employer" as that term is used in Title VII.[2]

In ruling on Defendants' motions, this Court will first review the standards which govern motions for summary judgment. Then, the Court will address, seriatim, the Defendants' arguments, which are set forth above.

Under Rule 56(c), Fed.R.Civ.P., a motion for summary judgment must be overruled unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In *Snider v. Creasy*, 548 F.Supp. 601 (S.D.Ohio 1982), Judge Rubin summarized this standard:

The summary judgment standard in this circuit is a stringent one. Federal Rule of Civil Procedure 56(c) permits the Court to grant summary judgment only when there is no genuine issue of material fact and when the moving party is

---

1. Additional evidence of the facts and circumstances surrounding this case will be discussed, when relevant, in connection with the Court's resolution of the issues raised by Defendants' motion.

2. The Court has rearranged the Defendants' arguments merely for the sake of convenience so that arguments relating to each Defendant may be discussed in order.

entitled to judgment as a matter of law. *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1195 (6th Cir.1974). In deciding a Motion for Summary Judgment, the Court must construe evidence most favorably to the opposing party. *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962).

*Id.* at 602. *See also, Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir. 1983); *Weaver v. Shopsmith, Inc.,* 556 F.Supp. 348 (S.D.Ohio 1982); Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465. Of course, if a motion for summary judgment is properly supported, the opposing party may not rest on her pleadings; rather, she must present affidavits or other evidence which set forth specific facts demonstrating the existence of a genuine issue of material fact. Rule 56(e), Fed.R.Civ.P.; *Gillmore v. Proctor & Gamble Company,* 417 F.2d 615 (6th Cir. 1969).

With these standards in mind, the Court will now address the specific arguments in support of summary judgment raised by Defendant NCR.

## I.

In her complaint, Plaintiff asserts liability against NCR on two, independent theories. NCR has moved for summary judgment on both of these theories, raising distinct arguments for each. The theories and NCR's corresponding arguments in favor of summary judgment will be discussed separately.

## A.

■ Initially, Plaintiff seeks to impose liability on NCR on the theory that NCR and its wholly owned subsidiary, NCR GmbH, are a single or joint employer within the meaning of Title VII. Plaintiff's complaint (Doc. # 1) at ¶ 16.

NCR seeks summary judgment on the theory that it and its wholly owned subsidiary, NCR GmbH, are separate entities and not a single employer. NCR asserts that as a general rule a parent corporation is not liable for violations of Title VII by its wholly owned subsidiaries. Consequently, Plaintiff fails to state a claim against NCR and, therefore, NCR is not liable for the alleged discrimination by NCR GmbH. In making this argument, NCR relies, primarily, on *Hassell v. Harmon Foods, Inc.,* 454 F.2d 199 (6th Cir.1972), *affirming,* 336 F.Supp. 432 (W.D.Tenn.1971).

In *Hassell,* the Sixth Circuit affirmed the District Court's grant of a summary judgment for the defendant employer. The Court noted that the District Court had found that the relationship between parent and subsidiary was a normal one which could not be called a sham. Therefore, the Court concluded that the subsidiary was legally contemplated as a separate corporation, because the parent would not be liable for the debts of the subsidiary and the subsidiary was a separate corporation for tax purposes. 454 F.2d at 200. On that basis, the District Court declined to find that the two corporations constituted a single employer for purposes of Title VII. Similarly, the Court of Appeals determined that the record supported the District Court's finding. *Id.*

However, in *Armbruster v. Quinn,* 711 F.2d 1332 (6th Cir.1983), the Sixth Circuit said that "*Hassell* does not set forth an inflexible test." *Id.* at 1336 (footnote omitted). The court noted that while corporate law doctrines may be helpful in determining whether to treat a parent and subsidiary as separate entities:

[T]he most important requirement is that there be sufficient indicia of an interrelationship between an immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer. When such a degree of interrelatedness is present, we consider the departure from the "normal" separate existence between

entities an adequate reason to view the subsidiary's conduct as that of both. *Id.* at 1337 (citations omitted).

Next, the court turned its attention to the task of setting standards, by which the degree of interrelationship might be assessed.

> For guidance in testing the degree of interrelationship, we look to the four-part test formulated by the NLRB and approved by the Supreme Court in *Radio Union v. Broadcast Service*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam). *Accord Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1st Cir.1980); *Williams v. Evangelical Retirement Homes of St. Louis*, 594 F.2d 701, 703 (8th Cir.1979); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977); *see also, EEOC v. American National Bank*, 652 F.2d 1176, 1185 (4th Cir.1981), *cert. denied*, [459] U.S. [923], 103 S.Ct. 235, 74 L.Ed.2d 186; *cf. Dumas v. Town of Mt. Vernon*, 612 F.2d 974, 980 n. 9 (5th Cir.1980). This Circuit has also adopted this test which assesses the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *See, e.g., NLRB v. Borg Warner Corp.*, 663 F.2d 666 (6th Cir.), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2903, 73 L.Ed.2d 1313 (1982). While each factor is indicative of interrelation and while control over the elements of labor relations is a central concern, *see, Sheeran v. American Commercial Lines*, 683 F.2d 970, 978 (6th Cir.1982), the presence of any single factor in the Title VII context is not conclusive.
>
> All four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable. *See, Metropolitan Detroit Bricklayers v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir.1982); *Local No. 627, Operating Engineers v. NLRB*, 518 F.2d 1040, 1045–46 (D.C.Cir. 1975), *aff'd in relevant part sub nom. South Prairie Construction Co. v. Local 627, Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976); *see generally, Soule Glass and Glazing Co. v. NLRB*, 652 F.2d 1055, 1075–76 (1st Cir.1981).
>
> The showing required to warrant a finding of single-employer status has been described as "highly integrated with respect to ownership and operations." *Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 726 (N.D.Ala.1981), *aff'd*, 664 F.2d 295 (11th Cir.1982), *quoting, Riverside Motor Inn*, 199 NLRB 1033 (1972) *and Operating Engineers, Local 428*, 169 NLRB 184 (1968). The test may also be satisfied by a showing that there is an amount of "participation [that] is sufficient and necessary to the total employment process," even absent "total control or ultimate authority over hiring decisions." *Rivas v. State Board for Community Colleges and Occupational Education*, 517 F.Supp. 467, 470 (D.Colo. 1981).

*Id.* at 1337–38 (footnote omitted).

Finally, the court set forth the standard to be used in making such determinations.

> From the reasoning of the courts in the above-discussed cases and from our examination of the apparent Congressional intent, we adopt a "facts and circumstances" test which pays heed to the factors found relevant to the question of single-employer status in the National Labor Relations Act context. This test seeks to effectuate the broad and remedial purposes of the Act reaffirmed in the comprehensive Equal Employment Opportunity Act of 1972. The appropriate standard is whether, upon review of the circumstances of the intercorporate relationship, [the parent corporation] exercises a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary corporate entity.

*Id.* at 1338. *See also, EEOC v. Wooster Brush Company Employees Relief Assn.*, 727 F.2d 566, 33 FEP 1823 (6th Cir.1984).

This Court now applies the standards set forth in *Armbruster* to the affidavits and other evidence before the Court. The issue which must be resolved is whether the interrelationship of NCR and NCR GmbH raises a genuine issue of fact on the question of whether they are separate companies or entities. NCR is entitled to summary judgment only if there is no genuine issue of fact as to the control exercised by NCR over NCR GmbH and that, as a matter of law, the control NCR exercised was no greater than that normally exercised by a parent corporation over its subsidiary.

Viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that whether NCR exercises greater control over NCR GmbH than that normally exercised by a parent corporation over its subsidiary, so that the two may be considered a single employer for purposes of Title VII, raises a genuine issue of fact.[3] In reaching this conclusion, the Court, as directed by *Armbruster,* pays particular attention to the factors developed to determine single-employer status within the context of the National Labor Relations Act.

Examining these factors in reverse order, first, it is not controverted that NCR and NCR GmbH have common ownership. NCR GmbH is a wholly owned subsidiary of NCR. Second, there is ample evidence before the Court to create an issue of fact as to whether the labor relations of NCR and NCR GmbH were centralized. The depositions of Erwin H. Heinz, director of personnel resources for NCR–Europe, demonstrates the existence of such a genuine issue of fact. NCR GmbH is not authorized to change any remuneration plans, benefits, or operating conditions without prior approval from NCR. (Heinz Dep. at 66). Subsidiaries such as NCR GmbH were ex-pected to implement NCR corporation-wide personnel policies unless such policies violated local law. (*Id.* at 33). Certain personnel decisions with regard to individual employees, such as hirings, firings and raises, required approval by NCR. (*Id.* at 7; 19–20).

The next factor to consider is the common management of the parent and subsidiary. A supervisory board, with six members each from management and employees, oversees NCR GmbH. (Reynolds Dep. at 11). NCR appointed Reynolds to the board, and it also appointed the other management members of that board. (*Id.* at 11–12; 75–77). This is sufficient indicia to raise a genuine issue of fact over the common management of NCR and NCR GmbH.

Additionally, there is a genuine issue of fact regarding the interrelated operations of NCR and NCR GmbH. NCR GmbH markets products assigned to it by NCR. (*Id.* at 24). NCR GmbH must receive approval of NCR prior to entering into a new product line. (*Id.* at 27–30; 43–44).

Based on the foregoing, the Court concludes that whether NCR and NCR GmbH are a single employer or separate companies and entities presents a genuine issue of material fact. Accordingly, this branch of Defendants' motion for summary judgment is overruled.[4]

## B.

■ Plaintiff's alternative theory of liability against NCR is that it is an employment agency within the meaning of Title VII. Plaintiff's Complaint at ¶ 17. Defendants move for summary judgment on this allegation arguing that it does not fall

---

**3.** It is axiomatic that the Court's conclusion that a genuine issue of fact exists is not a finding that NCR and NCR GmbH are a single employer. Ultimate resolution of that question must await trial on the merits.

**4.** In their reply memorandum (Doc. # 33), Defendants argue that use of the NLRA standards, as set forth in *Armbruster,* to find that NCR and NCR GmbH are a single employer is prohibited by Treaty. In particular, Defendants rely on Article XXV(5) of the Treaty of Friendship, Commerce and Navigation between the United States and Germany. 7 U.S.T. 1839, 1866 (1956).

Whatever the merits of this contention, the Court declines to address them because Defendants did not raise same until their reply memorandum. Of course, Defendants are free to raise this argument in post-trial briefing.

within the statutory definition of employment agency.

Under Title VII:

The term "employment agency" means any person *regularly* undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

42 U.S.C. § 2000e(c) (emphasis added).

Defendants argue that the single act of Reynolds contacting Pruditsch, at Plaintiff's request, does not make NCR an employment agency. What is missing, Defendants contend, is the requirement of regularity.

In the Court's opinion, the affidavit of Reynolds does not demonstrate the absence of a fact question regarding the regularity with which NCR would procure employees for NCR GmbH. In the affidavit, Reynolds states that "on rare occasions," NCR would expatriate workers to NCR GmbH at the latter's request. This does not demonstrate the absence of a genuine issue of fact regarding the regularity of NCR's actions. Based on the foregoing, it would appear that this branch of the Defendant's motion should be overruled.

*Nevertheless,* in spite of the foregoing, the Court is troubled by an issue that the parties do not directly address in the present context. As set forth above, an employment agency is a person who either procures employees for an *employer* or procures employment opportunities for employees to work with an *employer.* The parties do discuss in detail, although not in this context, whether NCR GmbH is an employer within the meaning of Title VII. For reasons set forth in Section II(B) below, this Court concludes that NCR GmbH is not an employer within the meaning of Title VII. Thus, the Court concludes that NCR is not an employment agency when it neither procured employees for an *employer,* nor procured, for an employee, the opportunity to work for an *employer.* Accordingly, this branch of Defendants' motion for summary judgment is sustained,

and Plaintiff's claim that NCR is liable as an employment agency is dismissed.

## II.

Defendants raise two independent grounds in support of summary judgment for NCR GmbH. First, Defendants argue that this Court lacks personal jurisdiction over NCR GmbH. Second, Defendants argue that NCR GmbH is not an employer within the meaning of Title VII, and as a consequence, NCR GmbH cannot be held liable under Title VII. These arguments will be discussed in order.

### A.

█ Defendants move for summary judgment asserting that the Court lacks personal jurisdiction over NCR GmbH. Initially, the Court notes that the proper procedural mechanism for challenging a court's jurisdiction over a party is through a motion to dismiss under Rule 12(b), Fed. R.Civ.P. *See generally,* 6 Moore, *Federal Practice,* ¶¶ 56.02[3], 56.03; 10 Wright, Miller & Kane, *Federal Practice and Procedure,* § 2713 at p. 608–13. In accordance with the practice of other courts, this Court will treat this branch of Defendants' motion as one to dismiss. *See, e.g., Meench v. Raymond Corp.,* 283 F.Supp. 68 (E.D.Pa. 1968).

█ A federal court, even when the underlying action is a federal question, may use the long arm statute of the forum state to determine whether it has personal jurisdiction over a defendant. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 376 n. 2 (6th Cir.1968); Rule 4(e), Fed.R.Civ.P. Consequently, the Court turns to the Ohio "long arm" statute, Ohio Rev.Code § 2307.382, to determine whether it has personal jurisdiction over NCR GmbH.

█ The Sixth Circuit has held that § 2307.382 is intended to extend the personal jurisdiction of courts to the constitutional limitations of due process. *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980); *In-Flight Devices Corp. v. Van Dusen Air,*

*Inc.,* 466 F.2d 220, 225 (6th Cir.1972). In order not to offend traditional notions of due process, a defendant must have "mini-mum contacts" with the forum state before a court may exercise jurisdiction over the defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To determine whether sufficient minimum contacts be-tween the defendant and the forum state exist, so as to support the exercise of juris-diction under § 2307.382 and not to offend due process, the Sixth Circuit has adopted a three-part test.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a conse-quence in the forum state. Second, the cause of action must arise from the de-fendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of juris-diction over the defendant reasonable.

*Welsh v. Gibbs, supra,* 631 F.2d at 440 (quoting from *Southern Machine Co. v. Mohasco Industries, Inc., supra,* 401 F.2d at 381). *Accord, In-Flight Devices Corp. v. Van Dusen Air, Inc., supra.*

 When a defendant challenges a court's jurisdiction over his person, the plaintiff has the burden of demonstrating that the Court has personal jurisdiction. *First National Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir. 1982). When the court decides the ques-tion of its jurisdiction over a party solely on the basis of the pleadings, the plaintiff need only make out a *prima facie* case of jurisdiction. *Welsh v. Gibbs, supra,* 631 F.2d at 438. If the moving party submits affidavits in support of its motion, the op-posing party must respond with affidavits or other permissible evidence which set forth specific facts showing that the court has jurisdiction. *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974). Finally, if the court concludes that the written sub-missions raise either issues of credibility or

disputed issues of fact, the court may con-duct an evidentiary hearing wherein the plaintiff must prove, by a preponderance of the evidence, that jurisdiction exists. *Welsh v. Gibbs, supra,* 631 F.2d at 439.

Because an issue of fact exists, the Court is not able to rule on this branch of Defend-ants' motion. In addition to asserting that the Sixth Circuit's three-part test has not been met, Defendants argue that the pres-ence of the parent corporation, NCR, is not a sufficient basis to assert jurisdiction over the subsidiary, NCR GmbH. The relation-ship of NCR and NCR GmbH is thus posit-ed as the existing fact question. In light of the existence of this fact question, the Court finds it unnecessary to decide wheth-er the Sixth Circuit's three-part test, above referenced, has been met.

 Normally, as Defendants assert, the presence of a parent corporation in the forum state does not alone give a court jurisdiction over the parent's subsidiaries. *Velandra v. Regie Nationale Des Usines Renault,* 336 F.2d 292 (6th Cir.1964). However, courts have relied on the pres-ence of a parent or subsidiary to assert jurisdiction over the other when the subsid-iary is considered a mere instrumentality of the parent. *See, e.g., Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634 (8th Cir. 1975); *Leach Company v. General Sani-Can Mfg. Corp.,* 393 F.2d 183 (7th Cir. 1968); *Captain International Industries v. Westbury, Chicago, Inc.,* 416 F.Supp. 721 (N.D.Ill.1975); *Freeman v. Gordon & Breach Science Publishers, Inc.,* 398 F.Supp. 519 (S.D.N.Y.1975); *Industrial Re-search Corp. v. General Motors Corp.,* 29 F.2d 623 (N.D.Ohio 1928).

Herein, the Court has concluded, in Sec-tion I(A) above, that the interrelationship of NCR and NCR GmbH is an issue of fact. This same question also raises an issue of fact for purposes of ascertaining the Court's jurisdiction over NCR GmbH. The usual procedure would be to hold a hearing to resolve this issue of fact. *Welsh v. Gibbs, supra.* However, the Court con-

cludes, in Section II(B) below, that NCR GmbH is not an employer within the meaning of Title VII and thus dismisses NCR GmbH. Consequently, it is unnecessary to conduct such a hearing or to ascertain the Court's jurisdiction over NCR GmbH. Therefore, this branch of Defendants' motion is overruled as moot.

### B.

Assuming, *arguendo*, that the Court has jurisdiction over NCR GmbH, the Defendants' alternative ground for summary judgment in favor of NCR GmbH presents a sufficient, independent basis to grant summary judgment in favor of that Defendant. In this branch of their motion, Defendants point to the uncontroverted fact that NCR GmbH is a West German corporation that does not operate in the United States. Defendants argue that Title VII does not apply to foreign corporations such as NCR GmbH. For reasons that follow, this Court agrees that Title VII is not applicable to foreign corporations, at least with respect to the employment of persons in foreign countries.

The United States Supreme Court has held on a number of occasions that in the absence of strong legislative intent, federal laws regulating employee/employer relations do not apply to foreign employers. *Benz v. Compania Naviera Hidalgo*, 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957); *McCulloch v. Sociedad Nacional deMarineros deHonduras*, 372 U.S. 10, 83 S.Ct.

671, 9 L.Ed.2d 547 (1963). *See also, Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) (Danish seaman may not use Jones Act to sue his employer, a Danish shipowner). As the Court said in *McCulloch, supra:*

> We therefore conclude, as we did in *Benz*, that for us to sanction the exercise of local sovereignty under such conditions in this "delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed." 353 U.S. at 147, 77 S.Ct. at 704.

372 U.S. at 21–22, 83 S.Ct. at 677–678.

Plaintiff argues that § 702 of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–1, evidences such an intent. Section 702 provides, in part, "[t]his subchapter shall not apply to *an employer* with respect to the employment of aliens outside a State ...." (emphasis added). Plaintiff argues that the negative implication of this language is that Congress intended Title VII to apply in the employment of American citizens in foreign countries. Indeed, two District Courts have seized on this language to hold American employers liable for their extraterritorial violations of Title VII. *Love v. Pullman*, 13 FEP 423 (D.Colo.1976), *affirmed on nonrelevant grounds*, 569 F.2d 1074 (10 Cir.1978); *Bryant v. International Schools Services, Inc.*, 502 F.Supp. 472 (D.N.J.1980), *reversed on other grounds*, 675 F.2d 562 (3rd Cir.1982).[5]

---

**5.** The Defendants suggest that this Court should follow those courts which have held that the ADEA does not apply extraterritorially to domestic corporations. *See, e.g., Pfeiffer v. William Wrigley, Jr., Co.*, 573 F.Supp. 458 (N.D.Ill. 1983); *Zahourek v. Arthur Young & Co.*, 567 F.Supp. 1453 (D.Colo.1983); *Clearly v. United States Lines, Inc.*, 555 F.Supp. 1251 (D.N.J.1983). Defendants note that because of the similar structure and purpose of Title VII and the ADEA, interpretations of one statute are often used in interpreting the other. *See, e.g., Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979).

For the following reasons, this Court feels that these cases decided under the ADEA are clearly distinguishable and provide no basis for decision herein. First, the ADEA has no provi-

sion, similar to § 702, from which one could infer an intent by Congress to apply the ADEA extraterritorially. Second, § 626(b), 29 U.S.C. § 626(b), of the ADEA, unlike Title VII, incorporates into it § 216(d), 29 U.S.C. § 216(d), of the Fair Labor Standards Act (FSLA). § 216(d) of the FSLA, in turn, provides that an employer shall not be liable with respect to work performed at a workplace which is exempt under § 213(f), 29 U.S.C. 213(f). Section 213(f) provides that FSLA shall not apply to work performed in a foreign country.

For the same reasons, those decisions refusing to apply the Equal Pay Act, 29 U.S.C. § 206(b), extraterritorially, *see, e.g., Schultz v. Wheaton Glass Co.*, 421 F.2d 259 (3rd Cir.1970), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64, are not applicable.

This Court will assume, for present purposes, that Title VII reaches the extraterritorial discrimination by American employers. Indeed, since Plaintiff sought employment outside this country, the Court may eventually have to decide whether Title VII has such a reach. In the event that the Court finds that NCR and NCR GmbH are a single employer and that they violated Title VII, it will be necessary to decide whether Title VII may be applied extraterritorially against an American employer, NCR.[6] However, the question here is whether Title VII extends to the employment practices of foreign corporations, such as NCR GmbH, outside the United States. Section 702 does not answer this question because by its express language, it applies only to employers. As previously indicated, this Court has concluded that NCR GmbH is *not* an employer within the meaning of Title VII.

The Court has not been able to glean, nor has the Plaintiff supplied, evidence, from either the statute or the legislative history, that Congress intended Title VII to apply to the employment practices of foreign corporations outside the United States. Based upon the foregoing, in the absence of "affirmative intention of the Congress clearly expressed," the Court concludes that NCR GmbH is not an employer within the meaning of Title VII. Accordingly, this branch of Defendants' motion for summary judgment is sustained. Consequently, judgment is entered in favor of the Defendant NCR GmbH and against Plaintiff on Plaintiff's claims against NCR GmbH. NCR GmbH is dismissed as a Defendant in this action.

### III.

To summarize, the Court has ruled on the outstanding motions in this case in the following manner:

(1) Plaintiff's motion for production of documents prior to the expiration of thirty days (Doc. # 19) is overruled as moot.

(2) Defendants' motion to strike (Doc. # 21) is overruled.

(3) Defendants' motion for summary judgment (Doc. # 11):

(a) That branch of Defendants' motion which is directed at the Plaintiff's allegation that NCR and NCR GmbH are a single employer is overruled.

(b) That branch of Defendants' motion which is directed at the Plaintiff's allegation that NCR is an employment agency is sustained.

(c) That branch of Defendants' motion challenging the Court's jurisdiction over NCR GmbH, treating same as a motion to dismiss under Rule 12(b), is overruled as moot.

(d) That branch of Defendants' motion which asserts that NCR GmbH is not an employer within the meaning of Title VII is sustained.

The clerk will enter the appropriate judgment.

Ruling on the Defendants' motion for summary judgment has demonstrated to the Court that there is one issue of overriding importance in this case: the interrelationship of NCR and NCR GmbH. Absent a finding that there is a sufficient interrelationship between NCR and NCR GmbH, Plaintiff can not recover from NCR for the actions of NCR GmbH, since the Court reads Plaintiff's complaint as alleging independent discrimination, not by NCR, but by NCR GmbH. Plaintiff did not assert independent discrimination by NCR in her memoranda in opposition to Defendants' motion. Therefore, the Court has determined that in the interests of judicial economy, the issues in this cause must be bifurcated. Pursuant to Rule 42(b), Fed.R. Civ.P., this Court hereby bifurcates the issues in this case and orders separate trial on the issue of the interrelationship of NCR and NCR GmbH. This issue will be tried to the Court, hopefully on the date originally set for trial upon the merits. Then, assuming the Court finds a sufficient

---

**6.** Defendants did not raise this question in their motion for summary judgment; consequently, the Court expresses no opinion on it.

interrelationship between NCR and NCR GmbH, the Court will try the remaining issues in this case. If the interrelationship referred to above, such as would cause this Court to conclude, as a matter of law, that NCR *is* responsible for the actions of NCR GmbH is not found, final judgment will be entered for the remaining Defendant, NCR.

A conference call, between the Court and the attorneys in this case, by conference call telephone communication, has been set for 1:15 p.m. on Tuesday, April 24, 1984, so that a new trial date and other pertinent dates can be set.