RENDERED: MAY 17, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-0636-MR

ROBERT BRAUN                                           APPELLANT

v.              APPEAL FROM FAYETTE CIRCUIT COURT
             HONORABLE DIANE MINNIFIELD, JUDGE
             ACTION NO. 21-CI-03016

BEARMAN INDUSTRIES, LLC; AND
TOP DOLLAR PAWN, LLC                                  APPELLEES

## OPINION
## AFFIRMING

** ** ** ** **

BEFORE: EASTON, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: Robert Braun appeals from the Fayette Circuit Court's dismissal of his complaint against Bearman Industries, LLC ("Bearman"), for lack of personal jurisdiction. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Bearman is a limited liability company that manufactures firearms and sells them wholesale to distributors throughout the United States. Bearman is organized and registered in Utah and its principal place of business is Salt Lake City.

On October 20, 2021, Braun purchased a handgun manufactured by Bearman from Top Dollar Pawn, LLC ("Top Dollar"), a Kentucky limited liability company with its principal place of business in Lexington. Several days later, as Braun was unloading the handgun, it discharged and injured his hand. Braun filed suit against Bearman and Top Dollar in Fayette Circuit Court, alleging defective design and/or manufacturing. The complaint included claims of strict liability, negligence, failure to warn, and breach of warranty against both defendants.

Bearman filed a motion to dismiss on the grounds the circuit court lacked personal jurisdiction. A hearing was conducted, at which it was determined that the parties should engage in preliminary discovery before the circuit court ruled on the motion. Bearman thereafter failed to respond to Braun's discovery requests. Braun filed a motion to compel which the circuit court granted. Bearman responded to the discovery requests and, two months later, moved for a status conference hearing on the motion to dismiss. At the status hearing, Bearman renewed its motion to dismiss. The circuit court entered an order dismissing

Braun's complaint for lack of personal jurisdiction over Bearman.  Braun filed a motion to alter, amend, or vacate.  Following a hearing, the circuit court affirmed its previous order dismissing Braun's claims against Bearman for lack of personal jurisdiction and issued an amended order making its ruling final and appealable.

During the course of the litigation, Bearman submitted an affidavit from its sole member-manager, Jared Yeates, to support its motion to dismiss.  It stated in pertinent part as follows:

> Bearman Industries does not conduct and has never regularly conducted business in the Commonwealth of Kentucky.
>
> Bearman Industries is not licensed or registered to do business in the Commonwealth of Kentucky and has never sought authorization to do so.
>
> Bearman Industries does not have any employees in Kentucky.
>
> Bearman Industries neither leases nor owns any real or personal property in Kentucky.
>
> Bearman Industries does not sell and has not sold its products to persons or entities in Kentucky.  It has no business contracts or agreements for services or distribution or parts manufactured in Kentucky or involving Kentucky-domiciled parties.
>
> Bearman Industries does not advertise and has not advertised its products in Kentucky.
>
> Bearman Industries does not purposefully direct or target, and has not purposefully directed or targeted, any internet advertising or website toward Kentucky residents or

businesses. Bearman Industries does not maintain, nor has it maintained, any website that allows consumers to purchase its products directly through any such website.

Bearman Industries does not solicit business in the Commonwealth of Kentucky nor does it derive any direct revenue from any product used or consumed or services rendered in Kentucky.

The firearm that is the subject of the above-captioned lawsuit and which allegedly caused injury to the Plaintiff was neither distributed to or sold by Bearman Industries to either Top Dollar Pawn, LLC or to the Plaintiff.

Bearman also asserted that it engages in no direct-to-consumer transactions, selling only bulk pallet orders of firearms to a limited number of wholesale distributors, located in Texas, Louisiana, Alabama, Florida, and Tennessee. According to statements made by counsel at the hearing on the motion to alter, amend, or vacate, the handgun that injured Braun had passed through two different pawn shops and three different owners before Braun purchased it.

Braun contended that Bearman placed its handguns into the stream of commerce voluntarily and was gaining revenue from the sale of those firearms in Kentucky. Braun claimed that Bearman regularly conducts business with its distributors and knew that its distributors regularly sold its products in Kentucky. Braun produced screenshots of various websites of national and local firearms retailers and pawn shops, showing Bearman weapons for sale in Lexington, Louisville, Corbin, Shelbyville, and Liberty, Kentucky. Braun asserted that there

are no facts in the record to suggest that Bearman does not derive substantial revenue from its sales in the Commonwealth and that Bearman had not refuted the evidence showing numerous online and in-person sales of its weapons in Kentucky.

## STANDARD OF REVIEW

Notably, Bearman filed its Motion to Dismiss pursuant to both CR 12.02(b), lack of jurisdiction over the person, and Kentucky Rules of Civil Procedure ("CR") 12.02(f), failure to state a claim upon which relief can be granted. However, Bearman's arguments were limited to those facts and applicable law regarding CR 12.02(b). Moreover, the circuit court limited discovery to that which was pertinent to the issue of personal jurisdiction and subsequently ruled on the motion to dismiss, granting the same. Appropriately, the circuit court did not convert the Motion to Dismiss to a Motion for Summary Judgement.[1] When deciding a motion to dismiss "the pleadings should be liberally

---

[1] Federal courts generally recognize that it is improper to convert motions to dismiss based on an alleged lack of personal jurisdiction into summary judgment motions. 10A *Fed. Prac. & Proc. Civ.* § 2713 (4th ed. 2023) ("In general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning . . . personal jurisdiction . . . . Therefore, although some courts have entered summary judgment on jurisdictional grounds, the general rule is that it is improper for a district court to enter a judgment under Rule 56 for defendant because of a lack of jurisdiction.") (footnotes and citations omitted); *Kerns v. Caterpillar, Inc.*, 583 F. Supp. 2d 885, 891 n.1 (M.D. Tenn. 2008); *Lavrov v. NCR Corp.*, 600 F. Supp. 923, 929

construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true. Because the issue of personal jurisdiction is a legal question to be answered in light of those allegations" our review is *de novo. Bondurant v. St. Thomas Hosp.*, 366 S.W.3d 481, 483 (Ky. App. 2011) (citations omitted).

## ANALYSIS

"When a lawsuit is filed in Kentucky against a non-resident defendant, the plaintiff carries the burden of establishing jurisdiction over the defendant." *Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011). The plaintiff is required to establish "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).

To determine if a plaintiff has met this burden, the circuit court employs a two-step process. First, the court must determine "if the cause of action arises from conduct or activity of the defendant" that fits within one of the categories enumerated in Kentucky's long-arm statute, Kentucky Revised Statutes ("KRS") 454.210. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57

---

(S.D. Ohio 1984). That approach makes sense because "a court that lacks personal or subject-matter jurisdiction does not have power to enter *any* kind of a judgment – summary or otherwise." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1012 (D. Minn. 2008).

*KKR & Co. Inc. v. Commonwealth*, No. 2022-CA-0347-MR, 2023 WL 8285978, at *6 n.7 (Ky. App. Dec. 1, 2023).

(Ky. 2011). Only if the defendant's conduct fits one these categories may the court move to the second step, which involves determining "if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id*.

The Kentucky Supreme Court has emphasized that these are two entirely separate and independent inquiries, explicitly rejecting the approach of earlier cases which skipped past KRS 454.210 and proceeded directly to a federal due process analysis. *Caeser's*, 336 S.W.3d at 57. The Court described the practice of essentially ignoring the long-arm statute by eliding it with federal due process considerations as "a misconception," because "if the intent of the statute were to reach the outer limits of federal due process, it could easily have been drafted to say precisely that." *Id*. at 56-57. The Court explained that

> [t]he reach of Kentucky's long-arm jurisdiction is a policy choice of the General Assembly, limited by federal and state constitutional considerations. KRS 454.210 is the legislature's expression of that policy, and, as such, the statute operates independently of federal due process analysis. Thus, we clarify that proper deference to the language of the statute compels that, as an initial step, review is necessary to determine whether long-arm jurisdiction over a foreign defendant is permissible under KRS 454.210.

*Id.* at 57.

The case upon which Braun relies most heavily, *Poyner v. Erma Werke Gmbh*, 618 F.2d 1186 (6th Cir. 1980), is an example of the approach

expressly rejected by the Supreme Court in *Caesar's*. *Poyner* relied on an early opinion of this Court which interpreted KRS 454.210(2)(a) "as coextensive with the outer limits of due process." *Poyner*, 618 F.2d at 1189 (citing *Volvo of America Corp. v. Wells*, 551 S.W.2d 826 (Ky. App. 1977)). *Poyner* is therefore not relevant to the first part of our jurisdictional analysis which must focus solely on the requirements of KRS 454.210.

Because the long-arm statute operates independently of the federal due process analysis, "a situation can occur in which the necessary contacts to satisfy due process are present, but *in personam* jurisdiction will not be obtained . . . because the statute does not authorize it." *Caesar's*, 336 S.W.3d at 57 (quoting *Banco Ambrosiano S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 476 N.Y.S.2d 64, 464 N.E.2d 432, 435 (1984)). "Claims based upon contacts, conduct, and activities which may not fairly be said to meet one of these explicit categories must be held to be outside of the reach of the statute, regardless of whether federal due process might otherwise allow the assertion of *in personam* jurisdiction." *Id.* at 56. But the opposite may also occur: A defendant's contacts or activities may meet the requirements of the long-arm statute but fail to meet the standards of federal due process. That is the situation in this case. And, notably, the constraints of due process do not determine whether a non-resident defendant may be sued, only where the suit may be brought.

## i. Kentucky's Long-Arm Statute

Under Kentucky's long-arm statute, KRS 454.210, a "person" is defined as including "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this Commonwealth." KRS 454.210(1). The statute provides, in pertinent part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;[2]
>
> 5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the

---

[2] This section was amended in 2024, effective April 10, 2024. These revisions do not affect the current action, as it was filed in 2021.

sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth[.]

KRS 454.210(2)(a).

When jurisdiction over a person is based solely upon one of the subsections of KRS 454.210(2)(a), "only a claim arising from acts enumerated in this section may be asserted against him." KRS 454.210(2)(b); *H.E.B., LLC v. Jackson Walkerr, L.L.P.*, 587 S.W.3d 333, 339 (Ky. App. 2019).

None of the first three subsections of KRS 454.210(2)(a) confers jurisdiction over Bearman. There is no evidence that Bearman transacted any business in Kentucky, contracted to supply goods or services in Kentucky, or committed a tortious act or omission in Kentucky under KRS 454.210(2)(a)(1), (2), or (3). There is no evidence that Bearman had contact with anyone in Kentucky for the purpose of transacting business or contracting to supply firearms in Kentucky. The presence in Kentucky of weapons manufactured by Bearman is not sufficient to exercise long-arm jurisdiction over Bearman under (1), (2), or (3) of KRS 454.210(2)(a).

Subsections (4) and (5), on the other hand, may confer jurisdiction if it can be shown that Bearman caused a tortious injury in Kentucky, *i.e.*, Braun's

-10-

personal injury, or breached a warranty in Kentucky by an act outside Kentucky, *i.e.*, the manufacture of an allegedly faulty handgun, if Bearman derives substantial revenue from the sale of its goods in Kentucky. The plain language of the statute does not specify that the substantial revenue must be derived from direct sales made by Bearman in Kentucky and cannot be the result of sales to a middleman or distributor.

Next, we must consider whether the claims asserted in the complaint arise from the derivation of substantial revenue as required under KRS 454.210(2)(b). There must exist "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." *Caesar's*, 336 S.W.3d at 58. Such a nexus does exist between the manufacture of a faulty firearm and Braun's resulting injury and the derivation of substantial revenue from the sale of such firearms.

Bearman is subject to personal jurisdiction under the long-arm statute in this particular case. But Braun has failed to demonstrate that exercising personal jurisdiction over Bearman would satisfy the demands of federal due process.

**ii. Federal Due Process**

"[D]ue process requires . . . that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he

-11-

have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hinners v. Robey*, 336 S.W.3d 891, 897 (Ky. 2011) (quoting *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).

"By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985)).

To determine if an out-of-state defendant has sufficient minimum contacts with Kentucky to satisfy these due process requirements, we consider whether the defendant purposefully availed itself of "the convenience of our forum by conducting activities within this Commonwealth, thus invoking the benefits and protections of our laws[.]" *Hughes v. Haas*, 413 S.W.3d 315, 318 (Ky. App. 2013) (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). "[I]t is the defendant's purposeful availment that makes jurisdiction consistent with

'traditional notions of fair play and substantial justice.'" *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880, 131 S. Ct. 2780, 2787, 180 L. Ed. 2d 765 (2011).

Merely placing goods in the stream of commerce is generally not sufficient to constitute purposeful availment. "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882, 131 S. Ct. at 2788. Under the "stream of commerce plus" theory adopted by the Sixth Circuit, "a defendant purposefully avails itself of the state's privileges only if it does something more than placing its product into the stream of commerce." *Estate of Gibson by and through Shadd v. Daimler North America Corporation*, 638 F. Supp. 3d 735, 746-47 (E.D. Ky. 2022). "'Something more' could be designing the product for the forum state's market, advertising in the state, providing regular advice to customers in the state, or marketing through a distributor in the state." *Id.* (citing *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032, 94 L. Ed. 2d 92 (1987)).

So, for example, in *Poyner*, the case cited by Braun, the Sixth Circuit Court of Appeals held that a German company had purposefully availed itself of the privilege of acting in Kentucky. The lawsuit was brought by a Kentucky

teenager who was seriously injured by a pistol manufactured by Erma, the German company. The record in the case showed that Erma had an agreement with L.A., a company based in New York, to be the sole United States distributor for Erma. The record also showed that Erma made efforts to maximize its sales in the United States and was "a strong backstage promoter of its products throughout the United States." L.A. conducted nationwide advertising, sold to a distributor in Lexington, Kentucky, had a salesman in Tennessee and a warehouse in North Carolina, all capable of selling to or servicing customers in Kentucky. L.A. also solicited business in Kentucky through telephone calls and mail-order catalogs. Erma was aware of L.A.'s activities to sell Erma products. The district court specifically found that "Erma was certainly aware of LA's activities to sell Erma products." *Poyner*, 618 F.2d at 1190-91.

There is no evidence of similar activities on Bearman's part or on the part of its distributors. There is no evidence that Bearman sells to a distributor located in Kentucky, that Bearman's distributors have solicited business in Kentucky, or that Bearman was even aware of its distributors' activities in Kentucky. There is no evidence that Bearman knew of the destination of its firearms after they were sold to the distributors, or that Bearman took any interest in where they were being distributed or encouraged their sale in Kentucky. Although Braun claims that he was denied sufficient time to conduct discovery, the

-14-

record indicates that Bearman did respond to his discovery requests and Braun made no further requests.

By contrast, in *Halderman v. Sanderson Forklifts Co., Ltd*., 818 S.W.2d 270 (Ky. App. 1991), this Court held that it would be unreasonable to exercise personal jurisdiction over a British manufacturer, Sanderson Forklifts, because there was no evidence of the minimum contacts with Kentucky necessary to satisfy due process. The lawsuit was brought by a construction worker in Kentucky who was injured by a dumper manufactured by Sanderson. The dumper was one of three purchased by Gerbus, a Cincinnati company, as part of an attempt to test the market in the United States for these products. The Court held it would be unreasonable to exercise jurisdiction over Sanderson Forklifts because "[a]t no time did Sanderson Forklifts ever seek to directly distribute its products in Kentucky. It released three of its pieces of equipment to Gerbus, a distributor located in Ohio, to be distributed at Gerbus' discretion. [Sanderson] has had no contact with any person or entity in this state. It was merely fortuitous that one Winget dumper ended up in Kentucky." *Halderman*, 818 S.W.2d at 274. Apart from the fact that Halderman only involved three forklifts, whereas Bearman appears to have placed a very large volume of its firearms into the stream of commerce, the same description could be applied to Bearman's connections (or lack thereof) to Kentucky. There is no evidence of any affirmative, purposeful

action on the part of Bearman to reach out to Kentucky and target its residents. As the circuit court aptly observed, "That Bearman sells firearms to distributors who in turn may, at their discretion, sell to third parties in Kentucky is not sufficient to conclude that Bearman has purposefully availed itself of the privilege of conducting business in this state." We fully agree with its conclusion that "[t]he mere fact that a gun manufactured by Bearman injured a Kentucky citizen within Kentucky borders is not, without more, sufficient grounds to satisfy due process requirements."

## CONCLUSION

Because the exercise of personal jurisdiction over Bearman does not meet the minimal requirements of due process, the Fayette Circuit Court's dismissal of Braun's complaint against Bearman is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Kennedy D. Slusher
Taylor M. Shepherd
Perry L. Greer
Lexington, Kentucky

BRIEF FOR APPELLEE BEARMAN INDUSTRIES, LLC:

Kristin M. Lomond
Bradly E. Moore
Randall Tracy Starnes
Lexington, Kentucky