**John WELSH and Flo–Start, Inc., Plaintiffs–Appellants,**

v.

**James W. GIBBS, Defendant–Appellee.**

**No. 79–3016.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 11, 1980.

Decided Oct. 2, 1980.

John M. Glenn, Buckingham, Doolittle & Burroughs Co., L. P. A., Steven E. Sigalow, Mark Frasure, Akron, Ohio, for plaintiffs–appellants.

A. Russell Smith, Laybourne, Smith & Miller, Akron, Ohio, for defendant–appellee.

Before LIVELY and ENGEL, Circuit Judges, and BALLANTINE,* District Judge.

LIVELY, Circuit Judge.

In this diversity case the district court determined that it lacked personal jurisdiction over the defendant and dismissed the complaint. We reverse and remand for further proceedings.

## I.

The plaintiffs are an individual citizen and resident of Ohio and an Ohio corporation. The defendant is a citizen and resident of Florida. On October 31, 1974 plaintiff Welsh and defendant Gibbs executed a written contract whereby Gibbs sold to Welsh "a novel switch or electric control unit," which James Gibbs and his brother [1] had invented. Included in the sale were all patent rights, trade secrets and "know-how" pertaining to the invention. The complaint in the district court sought damages for misrepresentations and breach of contract. Personal jurisdiction over the defendant was asserted under the Ohio long arm statute.[2]

At the time of execution of the contract the invention though patented, had not been perfected. The agreement provided that Gibbs would cooperate with Welsh in developing the invention, and specifically that he would work, free of charge, for ten days in "Akron, Ohio or elsewhere" perfecting a working model and preparing a production model. In the contract Welsh agreed to form an Ohio corporation which was to be devoted solely to production and marketing of the invention, including the sale of franchises and establishment of distributorships. The plaintiff Flo–Start, Inc. is that Ohio corporation. Gibbs agreed to answer questions asked by representatives of Welsh and Flo–Start, Inc. "which may advance their technical understanding of said switch invention and its operation and enable them to perfect a production model thereof." In addition to the patented invention, the sale included other inventions and discoveries claimed to have been made by Gibbs which were related to the basic invention. The defendant agreed to cooperate with the plaintiff in obtaining patents and developing these claimed inventions. The contract also provided that in the event of disagreement it would be construed according to the law of Ohio.

The agreement of October 31, 1974 was executed by both parties in Florida. The contacts and negotiations between the parties which preceded the signing of the agreement were described by the district court as follows:

The first contact between the parties was in early 1974 when the defendant Gibbs called plaintiff Welsh about an electrical control unit he had developed to control electrically operated carts, trucks, and other vehicles. Plaintiff Welsh made a trip to Florida to discuss the invention with the defendant. Later in 1974 the defendant again called the plaintiff who made another trip to Florida to discuss possible purchase of the invention. According to the affidavit filed by plaintiff Welsh, it was at this second meeting in mid–August 1974 that material representations were made by the defendant which were subsequently discovered to be false. The alleged misrepresentations are the basis of the present suit. (The defendant's affidavit describes a third meeting in Florida between plaintiff's agents, plaintiff's attorney and patent attorney, and defendant, his attorney and patent attorney.)

---

* The Honorable Thomas A. Ballantine, Jr., Judge, United States District Court for the Western District of Kentucky, sitting by designation.

1. James Gibbs's brother had assigned all his interest in the invention to the defendant.

2. The relevant portion of Ohio's long–arm statute, O.R.C. § 2307.382, is as follows:

  (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

  (1) Transacting any business in this state

  . . . .

The next contact between the parties was in early September when defendant brought a proto–type of the invention to plaintiff Welsh in Ohio. After signing a non–disclosure agreement in Akron, the defendant returned to Florida with the model. Plaintiff and defendant next met in Florida for negotiations extending over several days. Finally, plaintiff Welsh and his agents returned to Florida and signed the contract of sale.

The district court also noted that the plaintiffs selected a Florida engineering firm to assist in developing the invention and that Gibbs worked with that firm for 60 days rather than going to Akron for ten days work as required by the contract.

## II.

The district court found that the defendant initiated the contract negotiations with Welsh in Ohio and entered into a contract which contemplated the formation of an Ohio corporation. These facts led to the further finding that "defendant purposely availed himself of business contacts and opportunities in the State of Ohio, and defendant could reasonably have foreseen that the transaction would have consequences in that state." Dismissal was based on the district court's further findings: (1) ". . . there has been no showing that the business operations of the plaintiffs have had a realistic impact on the commerce of the state of Ohio"; (2) "Plaintiffs have further failed to show that the claim arose from defendant's activities in Ohio . . ."; and (3) ". . . the quality and frequency of defendant's contacts with Ohio viewed in their overall context will not sustain the exercise of jurisdiction over the defendant's person." In making these findings, the district court referred to this court's decisions in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (1968), and *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (1972).

Before ruling on the defendant's motion to dismiss, the district court received affidavits from the parties. There was no hearing on the motion. The procedure to be followed in deciding a motion to dismiss for lack of jurisdiction was outlined by the Seventh Circuit in *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (1971), as follows:

Rule 12(d), Federal Rules of Civil Procedure, enables a party asserting certain defenses enumerated in subsection (b) of that rule to raise such challenge prior to trial on the merits. The rule clearly contemplates hearing and determination of jurisdictional issues in advance of trial. 2A Moore, Federal Practice ¶ 12.16, at 2352–54 (2d ed. 1968). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). When considering a challenge to its jurisdiction, a court may receive and weigh affidavits. 5 Wright and Miller, Federal Practice and Procedure § 1351, at 565 (1969).

Based upon evidence obtained, the court properly decides jurisdictional disputes before trial. *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965); *Williams v. Minnesota Mining & Manufacturing Co.*, 14 F.R.D. 1, 5 (S.D.Cal.1953). The burden of proof rests upon the party asserting existence of jurisdiction, *id.* at 5; *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936). However, this burden is met by a prima facie showing that jurisdiction is conferred by the long arm statute. *United States v. Montreal Trust Co.*, 358 F.2d 239 (2nd Cir. 1966).

■ The burden of establishing jurisdiction is on the plaintiff. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). However, if the district court determines to decide the issue solely on the basis of written materials, the plaintiff should be required only to make a prima facie case of jurisdiction, that is, he need only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citation omitted). *Accord: Jetco Electronic Industries, Inc. v. Gardiner*, 473

F.2d 1228 (5th Cir. 1973). However, if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing. Where this occurs the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Data Disc, Inc. v. Systems Technology Associates, Inc., supra,* 557 F.2d at 1285.

In the present case the district court apparently concluded that the written materials presented no disputed questions of fact on jurisdiction and no issues of credibility. Under these circumstances, the burden of the plaintiff is relatively slight and the district court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 571 (S.D. Fla.1978) (citation omitted). *Accord: School District of Kansas City v. Missouri,* 460 F.Supp. 421, 433 (W.D.Mo.1978), *appeal dismissed,* 592 F.2d 493 (8th Cir. 1979); *Ammon v. Kaplow,* 468 F.Supp. 1304 (D.Kan. 1979).

### III.

■ In determining whether personal jurisdiction exists over a nonresident defendant in a diversity case, a district court applies the law of the state in which it sits subject to due process limitations. It has been determined that the Ohio long arm statute is intended to extend the jurisdiction of its courts to the constitutional limits, at least with respect to the "transaction of any business" provision. See *In–Flight Devices Corp. v. Van Dusen Air, Inc., supra,* 466 F.2d at 225. The constitutional limit of jurisdiction over nonresidents has been defined by the Supreme Court in a series of cases. The issue was stated by the Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in terms of two requirements: there must be minimum contacts with the forum state, and out–of–state service in the particular circumstances must not offend traditional notions of fair play. In *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228,

1238, 2 L.Ed.2d 1283 (1958), the Court held that a defendant may not be required to defend an action in a foreign tribunal unless he has had "minimal contacts" with the forum state. This requirement was further explained as follows:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Co. v. Washington,* 326 U.S. 310, 319 [66 S.Ct. 154, 159, 90 L.Ed. 95].

*Id.* at 253, 78 S.Ct. at 1239–40. Both *International Shoe Co. v. Washington* and *Hanson v. Denckla* were relied upon by the Supreme Court in its recent decision in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). That case involved a suit against nonresident defendants in a tort action.

This court has dealt with the problem of personal jurisdiction over nonresidents in a number of diversity cases seeking damages for breach of contract. *E. g. Southern Machine Co. v. Mohasco Industries, Inc., supra* (the Tennessee long arm statute); *Nationwide Motorist Ass'n of Michigan v. Freeman,* 405 F.2d 699 (6th Cir. 1969) (the Michigan statute); *King v. Hailey Chevrolet Co.,* 462 F.2d 63 (6th Cir. 1972) (the Tennessee statute); *In–Flight Devices Corp. v. Van Dusen Air, Inc., supra; M & W Contractors, Inc. v. Arch Mineral Corp.,* 466 F.2d 1339 (6th Cir. 1972); *Weller v. Cromwell Oil Co., supra* (all involving the Ohio statute); *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176 (6th Cir. 1975) (the Kentucky statute); *Capital Dredge & Dock Corp. v. Midwest Dredging Co.,* 573 F.2d 377 (6th Cir. 1978) (the Ohio statute); *Pickens v. Hess,* 573 F.2d 380 (6th Cir. 1978) (the Tennessee statute). The same tests have been applied to determine the existence of personal jurisdiction over nonresidents in ac-

tions for torts committed outside the forum state. *E. g., Kroger Co. v. Dornbos*, 408 F.2d 813 (6th Cir. 1969); *Poyner v. Erma Werke GMBH*, 618 F.2d 1186 (6th Cir. 1980).

The opinion of this court in *Southern Machine Co. v. Mohasco Industries, Inc., supra*, provides a three-part test for determining whether a given set of circumstances provides sufficient contact between a nonresident defendant and the forum state to support personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381 (footnote omitted).

### IV.

█ In granting the motion to dismiss, the district court compared the facts in the present case with those in *Southern Machine* and *In–Flight Devices*, applied the three criteria of *Southern Machine*, and concluded it lacked personal jurisdiction over Gibbs. Though *Southern Machine* provides a framework of analysis, it cannot be mechanically applied. A case does not automatically warrant dismissal because its facts do not fit the pattern of *Southern Machine, In–Flight Devices*, or one of our other decisions. In *Velandra v. Regie National Des Usines Renault*, 336 F.2d 292, 295 (6th Cir. 1964), this court stated:

> The existence or nonexistence of the necessary "minimum contacts" to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the International Shoe Company case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all–inclusive principles.

As the district court found, the defendant Gibbs purposefully availed himself of business opportunities and contacts in the State of Ohio. He made the first contact with plaintiff Welsh and followed up with a call to Welsh after their first discussion of the invention. Further, he entered into a contract which contemplated development of the invention and production of switch units in Ohio by an Ohio corporation. The district court found, however, there was "no showing that the business operations of the plaintiffs have had a realistic impact of the commerce of the State of Ohio." This is an action for misrepresentation and breach of contract. The entire tenor of the plaintiffs' claim is that successful production of the new switch units would have had a significant impact on the commerce of Ohio. Plaintiffs assert that the invention was represented as one which would revolutionize a substantial existing industry. The fact that no previously operating facilities in Ohio were deprived of revenue because of the defendant's alleged breach is of no importance. The contract required the formation of a new corporation dedicated solely to developing, producing and marketing defendant's invention. If the invention had been what the plaintiffs allege the defendant represented it to be, Flo–Start, Inc. would have added appreciably to the commerce of Ohio.

The district court also found that the plaintiffs "failed to show that the claim arose from defendant's activities in Ohio as required by the second prong of the test." This finding was based largely on the court's reading of Welsh's affidavit which referred to misrepresentations allegedly made by Gibbs in Florida. We believe this is too narrow a reading of the record. As we have pointed out, the pleadings and affidavits must be construed most favorably to the one against whom the motion to dismiss has been made. When the complaint and the October 31, 1974 contract attached as an exhibit are read along with the affidavit of Welsh it is clear that the plaintiffs are alleging a series of misrepresentations, some of which were made in

Ohio. An example is contained in paragraphs 7 and 8 of the complaint, which refer to events that took place in Akron:

7. At the time of the purchase of the Letters Patent and collateral rights in respect of the Mercury Contacts Control Unit, Defendant demonstrated and delivered to Plaintiffs a prototype model thereof. The prototype model was sufficiently complete to permit simulation of the operation of the Mercury Contacts Control Unit if produced in accordance with the designs of the Defendant for the Invention. Defendant demonstrated the prototype Mercury Contacts Control Unit to the Plaintiff Welsh and provided an appearance thereby of successful and easy operation in accordance with the advantages asserted by Defendant for the invention.

8. Defendant represented to Plaintiffs that the prototype of the Mercury Contacts Control Unit had been adequately tested and had no known hazards or defects in operation. Such representations were knowingly false.

The district court erred in weighing the two Ohio contacts against the five trips which Welsh or his agents made to Florida and determining therefrom that the Ohio contacts were not sufficiently significant to support a finding that the claim arose out of defendant's activities in Ohio.

Finally, the district court held that "the quality and frequency of defendant's contacts with Ohio viewed in their overall context will not sustain the exercise of jurisdiction over the defendant's person." The primary basis for this holding appears to be the court's finding that, apart from payment of the contract price, there is no continuing relationship between the parties. This finding is not supported by the record. It is true that Gibbs did not retain control over the production or marketing of his invention. However, he was bound by the contract to assist in obtaining patents for future inventions and discoveries related to the one already patented. Furthermore, the defendant was required to advance the "technical understanding" of the invention by the plaintiffs and to assist them in per-

fecting a production model. This contract cannot be fairly read to mean that Gibbs would have no relationship with the plaintiffs after the required ten days of work with the engineers in preparing a working model.

On the entire record before us we conclude that the plaintiffs established a prima facie case of personal jurisdiction over the defendant. There were minimum contacts with Ohio, and out-of-state service under the circumstances here shown did not offend traditional notions of fair play. *International Shoe Co. v. Washington, supra.*

The judgment of the district court is reversed and the cause is remanded for further proceedings.