**CENTRAL INVESTMENT CORP.,**
**Plaintiff,**

v.

**MUTUAL LEASING ASSOCIATES, INC.,**
**et al., Defendants.**

**No. C–1–80–004.**

United States District Court,
S. D. Ohio, W. D.

June 16, 1981.

Thomas T. Terp, Cincinnati, Ohio, for plaintiff.

John B. Pinney, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge.

This is a diversity action brought by Central Investment Corp. (Central), an Ohio Corporation with its principal offices in Cincinnati, Ohio, against Mutual Leasing Associates, Inc. (Mutual), a Michigan corporation, Mutualvest, an Illinois corporation, Terminal Leasing Corp. (Terminal), Emptor Enterprises (Emptor), a partnership, and John Mull and Richard Goldstein. All of the business entities named as defendants have their principal place of business in Des Plaines, Illinois, and both of the individual defendants are Illinois residents.

Plaintiff seeks to recover a liquidated debt of $135,124.00 together with punitive damages arising out of an allegedly fraudulent scheme perpetrated jointly by all defendants against plaintiff. Defendants admit that they owe plaintiff a debt in the amount of $135,124.00. In addition to alleging a fraudulent scheme against all defendants, plaintiff seeks to set aside the separate existence of the corporate entities and hold defendants Mull and Goldstein individually liable for the debt on the basis that the corporate entities were merely the alter egos or agents of these individuals.

Defendants have filed a motion with a supporting memorandum to dismiss plaintiff's second amended complaint as to Terminal, Emptor, Mull, and Goldstein, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of personal jurisdiction, or, in the alternative, to transfer the action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). (Doc. 18). In that memorandum, defendants rely on a previous memorandum with supporting affidavits which was also filed in opposition to this Court's exerting personal jurisdiction over the defendants. (Docs. 8, 9). Plaintiff has filed a memorandum in opposition to defendants' motion with a supporting affidavit (Docs. 21, 22) to which defendants have replied. (Doc. 23). Also on file is the deposition of Edward C. Vandenburgh, the Vice President and Treasurer of Mutual during the time of the allegedly fraudulent transaction.

Plaintiff's cause of action arises out of a transaction between Central and Mutual. On February 1, 1979, Central entered into a lease agreement with Mutual for certain computer equipment. Pursuant to the lease agreement, the equipment was to be purchased by Mutual from International Business Machines (IBM) and leased to Central for an agreed monthly rental over a term of five years. Central claims that when the equipment was delivered to Central, Mutual notified it that Mutual was experiencing a temporary cash flow problem and was unable to pay for the equipment at that time. Mutual suggested that the transaction could still be completed if Central would pay IBM $137,624.00 directly for the equipment and then Mutual would reimburse Central in a week or two. As an accommodation to Mutual, Central followed Mutual's suggestion. Central also executed finance statements showing Mutual as the title owner of the equipment. Central alleges that the lease and finance statements were signed and the funds advanced to IBM on the defendants' promises to repay the $137,-624.00 within two weeks.

On February 7, 1979, Mutual Leasing assigned the lease agreement to Citicorp Leasing Inc. (Citicorp), realizing $142,-872.61. Despite Central's repeated demands, Mutual has never repaid Central for the funds it advanced to IBM, and, as a result of Mutual's assignment of the lease, Central is obligated to make lease payments to Citicorp for equipment it had already purchased outright from IBM.

Defendants argue that plaintiff lacks personal jurisdiction over Emptor and Terminal on the basis that it has made no showing that these entities had anything to do with the transaction involved. Defendants further contend that personal jurisdiction may not be obtained over Mull and Goldstein as individuals, because, at all times pertinent to the transaction and in relation to their dealings with Mutual, they were acting on behalf of the corporation. Moreover, none of the above defendants have any contacts with the State of Ohio. Neither Mull nor Goldstein has transacted personal business in Ohio nor owns any real or personal property here. The acts complained of concerning the allegedly fraudulent transaction all occurred in Illinois. Mull's affidavit states that he never dealt with Central, either personally or in connection with the business. Goldstein's affidavit states that his only contact with Central was that he did speak on the telephone with the controller for Central, Stephen Chapman, but that he had no knowledge of the lease transaction until after the documents were executed by Central Investment.

■ The case of *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir. 1980) thoroughly sets out the

procedures and criteria by which a district court is to determine the issue of personal jurisdiction. While the burden of establishing jurisdiction is on the plaintiff, *Welsh, supra, Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974), where the district court determines to decide the issue solely on the basis of written materials, that burden is relatively slight. The plaintiff is only required to make a *prima facie* case of jurisdiction and the district court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Welsh, supra.*

It is well-established that a district court applies the law of the state in which it sits, subject to due process limitations. *Welsh, supra.* It has been determined that the Ohio long arm statute, Ohio Rev.Code § 2307.382, is intended to extend the jurisdiction of its courts to the constitutional limits, at least with respect to the "transaction of any business" provision. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972). The parameters of the constitutional limits are defined in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) in terms of two requirements: (1) there must be minimum contacts in the forum state; and (2) out-of-state service in the particular circumstances must not offend traditional notions of fair play.

In the instant case, Mull and Goldstein both admitted that they had made trips to Ohio in the past in their capacity as corporate officers for the purpose of conducting business, though not business with Central. Mutual did have a Cincinnati representative as well as a branch office in Cleveland. Mutual's Cincinnati representative allegedly took part in the lease transaction. The Court's jurisdiction over Mutual is not contested. Clearly, personal jurisdiction over Mutual is appropriate.

However, plaintiff has also demonstrated, through the affidavits of Mull and Goldstein and the deposition of Edward Vandenburgh, that Mull was the executive Vice President of Mutual from 1975–1979, and Goldstein was President. In February of 1979, Mull and Goldstein were also two of three members of the Board of Directors of Mutual and "called all the shots." Mutual was owned by Mutualvest, which simply acted as a holding company for Mutual. In February of 1979, Mull and Goldstein owned all of the shares of Mutualvest. Mull and Goldstein were also the top officers and controlling shareholders of Terminal, as well as partners in Emptor Enterprises.

All of these business entities shared one large office space and employed the same people. Mutual paid the rent for the entire space. Mutual also paid for all of the office equipment and for all but one individual's salary and a small portion of Mull's salary. There was frequent borrowing between the companies, and there was never any interest involved in any of the loans. As Vandenburgh stated, "whichever company had cash on a given day, lent it to whichever company needed it." In Vandenburgh's opinion, Mutual Leasing had a severe deficit of working capital by one to one-and-a-half million dollars. Mutual had been unable to pay its debts as they came due since Vandenburgh started in 1978, and had been undercapitalized since that time, until it assigned all of its assets for the benefit of creditors on January 30, 1980.

Despite these problems, Mull and Goldstein each drew a salary, primarily from Mutual, of over $50,000 apiece per year. In addition, Mull and Goldstein, on at least a monthly basis, each borrowed money from Mutual in amounts approximating $1,000.00 without interest. Moreover, Mutual paid Emptor $400, to $600 per month for the lease of two Mercedes SEL automobiles for Mull's and Goldstein's use.

In June of 1979, Mull and Goldstein resigned as officers from Mutual, but they remained as directors. Prior to the assignment for the benefit of creditor's of Mutual's assets, Mull and Goldstein, as directors, passed a resolution to pay themselves $110,000.00 in consulting fees, an amount which exceeded the amounts borrowed by them from Mutual plus Emptor's debt to Mutual for the lease of the automobiles. At this

time, Mull was indebted to Mutual for approximately $25,000, Goldstein for approximately $50,000, and Emptor for approximately $15,200. The effect of this transaction was to wash out the three debts, as no money was ever paid and the fees were excessive in terms of services performed by Mull and Goldstein subsequent to June 30, 1979.

Plaintiff urges this Court to apply the alter ego doctrine to consider the defendant business entities merely as an aggregation of persons, in this case specifically Mull and Goldstein. The Sixth Circuit, in *Bucyrus-Erie Company v. General Products Corp.*, 643 F.2d 413 at p. 418 (6th Cir. 1981) applying Ohio law, stated:

> The notion of the corporation as a legal entity is a fiction of the law introduced for convenience in conducting business. Under Ohio law, when "urged to an end subversive of its policy," the fiction should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law. [Citations and footnotes omitted].

Although no precise test for disregarding the corporate fiction has been articulated by the courts, certain general principles have been recognized.

> The corporate fiction should be disregarded when: (1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. [Citations omitted].

*Bucyrus-Erie, supra* at p. 418.

■ Factors to consider in determining when the above principles should be applied are observance of corporate formalities, undercapitalization, and fraud or the result of unjust or inequitable consequences in the event the corporate fiction were retained. *Bucyrus-Erie, supra* at pp. 418–419.

■ Plaintiff's theory of recovery is based on its contention that Mull and Goldstein fraudulently manipulated the defendant business entities for their own unjust enrichment and in so doing deprived plaintiff of the monies due it. In our opinion, plaintiff, on the face of the pleadings and written materials submitted to this Court has demonstrated at least a *prima facie* case for application of the alter-ego theory. *Bucyrus-Erie, supra, Welsh v. Gibbs*, 631 F.2d 436 (6th Cir. 1980). Once the corporate fiction is dissolved, Mull and Goldstein are revealed as the instigators of the actions of the business entities which they dominated and controlled and used as their agents to transact their allegedly fraudulent scheme on the plaintiff.

Ohio Rev.Code § 2307.382 states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state; . . . .

■ Plaintiff has made out a prima facie case that Mull and Goldstein did transact business in this state through the business entities, in particular, Mutual, which were their agents and whose conduct was inextricably entwined under Mull and Goldstein's control. Further, the business operations so conducted did have a realistic impact on the commerce in this state, which impact was reasonably foreseeable by defendants. This is sufficient to satisfy the requirement of the "transaction of any business" clause of the Ohio long arm statute. *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972). The instant case is factually distinguishable from *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974) where corporate agents doing business in this state were found not to be agents of individual corporate officers for the purposes of the Ohio long arm statute. In *Weller*, the corporate veil was not pierced; thus, the corporation controlled the activities of its agents. In this case, the corporate entity being disregarded, it is the individuals who dominated and controlled the business entities as their agents. Ac-

cordingly, this Court finds that plaintiff has demonstrated a *prima facie* case in favor of personal jurisdiction over Mull and Goldstein, as well as their agents Emptor and Terminal, all of which used Mutual as their agent for the transaction of business in this state and for the fraudulent scheme allegedly perpetrated on the plaintiff.

The Court further finds that this case should *not* be transferred to the Northern District of Illinois as defendants have requested. Title 28 U.S.C. § 1404(a) provides:

> For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The factors relevant to the determination of whether such transfer would be for the convenience of parties and witnesses and in the interests of justice are set forth in *Artisan Development v. Mountain States Develop. Corp.*, 402 F.Supp. 1312 (S.D.Ohio 1975). The decision to transfer is within the sound discretion of the district court judge, and plaintiff's choice of forum is given considerable weight. The balance of convenience, considering all relevant factors, must be strongly in favor of a transfer before it will be granted. *Artisan Development*, 402 F.Supp. at 1314.

Having considered the relevant factors as set forth in *Artisan Development*, 402 F.Supp. at 1314–1315, and the arguments of and materials submitted by the parties, the Court finds that the balance of convenience does not weigh strongly in favor of a transfer, and that the interests of justice dictate that the case remain in its present forum. Accordingly, defendants' motion to dismiss for want of personal jurisdiction or, in the alternative, to transfer this case to the Northern District of Illinois, is denied.

SO ORDERED.