**INFO–MED, INC., Plaintiff,**

v.

**NATIONAL HEALTHCARE, INC., Dr. Michael J. Kalson, et al., Defendants.**

Civ. A. No. 86–0156–0(CS).

United States District Court,
W.D. Kentucky,
Owensboro Division.

Sept. 22, 1987.

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,*   754 F.2d 738, 746 (7th Cir.1985).

Thomas E. Neal, Connor, Neal Stevenson & Thompson, Owensboro, Ky., for plaintiff.

Septtimous Taylor, Jones, Harrington & Taylor, Owensboro, Ky., for Dr. Michael J. Kalson.

George S. Wilson, III, Wilson, Wilson & Plain, Owensboro, Ky., for Mac A. Wilson.

## MEMORANDUM OPINION AND ORDER

SIMPSON, District Judge.

This matter is before the Court on motion by defendants, National Healthcare, Inc. (hereinafter "National") and Dr. Michael J. Kalson, to dismiss plaintiff's complaint against them pursuant to Rule 12(d), Fed.R.Civ.P., for lack of *in personam* jurisdiction. National is a Delaware corporation with its principle place of business in Alabama. Kalson is a citizen of the State of Georgia. This action involves a contract dispute between entities and citizens of different states and the amount in controversy exceeds Ten Thousand Dollars ($10,-000.00). 28 U.S.C. § 1332.

The plaintiff, Info-Med, Inc., is a Kentucky corporation that specially designs and develops computer hardware and software available for sale to medical facilities. In its complaint, Info-Med alleges that, by letter dated September 17, 1985, National agreed to purchase twenty (20) "newly placed physician packages" valued at Twenty-Four Thousand Eight Hundred Ninety-Five Dollars ($24,895.00) each.[1] As a result, Info-Med employed additional personnel and entered into agreements to purchase computer equipment from its suppliers in anticipation of future manufacture and delivery.

In December of 1985, National submitted a purchase agreement to Info-Med for a Medicon Medical Receivable Management Software and Computer System, Medical Business System and Medical Insurance System. Thereafter, between January and March of 1986, additional purchase orders were submitted by National for five (5) Micro PDP-11 S/V Systems consisting of computer hardware, software and user licenses as well as transportation, installation and training. These purchase orders were accepted and the contracts for goods and services were formed by Info-Med's execution of the orders in Owensboro, Kentucky. Each and every purchase agreement contained a choice of law provision requiring that any disputes arising under the agreements be governed by Kentucky law.

Pursuant to these agreements, Info-Med specially designed the computer systems for use at locations designated on the purchase agreements, installed the systems

---

1. These "newly placed physician packages" were comprised of complete computer systems including operating and software licenses. In connection with their sale, Info-Med would also design and implement the most efficient business operation and train the buyer's personnel in its proper use.

and trained users.[2] Thereafter, National and Kalson allegedly defaulted on their payments for the equipment and services provided by Info-Med. Numerous telephonic conferences subsequently took place between Kalson and employees of Info-Med in negotiation of the resolution of Info-Med's demands for payments.[3]

In response to National's claim that it has had no physical contacts with Kentucky, Info-Med tendered newspaper articles that indicate otherwise.[4] These articles indicate that from approximately May of 1986 to January of 1987, National's corporate officers or employees were present in this State in connection with negotiations to purchase the Valley View Medical Center located in Union County, Kentucky, and in order to effect compliance with State requirements in connection therewith. These articles state that officials of National were present in this State on numerous occasions to assess the Union County facility reportedly worth Three Million Dollars ($3,000,000.00). However, after its lengthy investigation, National finally decided not to purchase the facility.

In support of their motion, both Kalson and National contend that all contracts, negotiations and contacts between the parties occurred in Alabama with plaintiff's employee who maintained an office in that State. National asserts, by affidavit, that each of the purchase agreements were either mailed or hand-delivered to the employee of Info-Med in Alabama who may have forwarded them to Info-Med in Kentucky for execution. As a result, both defendants assert that they had no contact with the Kentucky office of Info-Med and that they lack "minimum contacts" with Kentucky.

When a challenge to personal jurisdiction is made, the burden is on the plaintiff to show its existence. *First Nat. Bank, etc. v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1125 (6th Cir.1982); *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). When the trial court determines to decide the issue solely on the basis of written submissions, this burden is satisfied if the plaintiff "demonstrates facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Welsh*, 631 F.2d at 438 (citation omitted). In other words, the plaintiff's burden is "relatively slight" and, the pleadings and affidavits will be construed in a light most favorable to the plaintiff. *Id.* at 439, 440.

In its determination of whether or not personal jurisdiction exists over a nonresident in a diversity action, a federal court must apply the law of the state in which it sits subject to the limitations of the due process clause of the Fourteenth Amendment. *Welsh v. Gibbs*, supra.; *Clay v. Hopperton Nursery, Inc.*, 533 F.Supp. 476, 478 (E.D.Ky.1982); *Thermothrift Ind., Inc. v. Mono-Therm Insul. Systems*, 450 F.Supp. 398, 402 (W.D.Ky.1978). Accordingly, the Kentucky long-arm statute is applicable, and states, in pertinent part, as follows:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth.

Ky.Rev.Stat. 454.210(2)(a).

It is well established that the Kentucky long-arm statute allows state courts to reach the full constitutional limits of due process in the extension of jurisdiction over nonresident defendants. *First Nat. Bank*

2. The locations designated on the purchase agreements were in the states of Louisiana, Alabama, Arkansas, Florida and Georgia.

3. Kalson is named as the purchaser of a computer medical system on a purchase agreement accepted by Info-Med on February 10, 1986. This agreement contained the same choice of law provision, and stated a purchase price of $24,895.00. This contract was also accepted by Info-Med in Kentucky.

4. This material may be properly considered since the jurisdictional issue can be decided by consideration of "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985) (citation omitted).

*v. Brewer*, 680 F.2d at 1125; *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky.App.1984). Furthermore, since Kentucky courts have determined that its long-arm statute is as broad as due process, the issue regarding the intended reach of the long-arm statute by the State is merged into a single query of whether or not jurisdiction is proper within the outer limits of due process. *First Nat. Bank v. Brewer*, supra.; *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1188 (6th Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); *Mohler*, supra. See also *Thermothrift Ind., Inc.*, 450 F.Supp. at 403.

With regard to the assertion of personal jurisdiction over a nonresident defendant when a contract is at issue, the United States Supreme Court has reaffirmed the "minimum contacts" test enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) as the method federal courts may use to test the strictures of due process. *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Hence, the three-prong test set forth in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968) and molded from the "minimum contacts" concept in *Int'l. Shoe v. Washington*, 326 U.S. at 316, 66 S.Ct. at 154, is applicable to the case at bar and may be stated as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d at 381.

This three-prong test is intended to be a framework for analysis and is not susceptible to mechanical application. *Welsh v. Gibbs*, 631 F.2d at 440. Whether or not personal jurisdiction is established in any instance depends upon the facts and circumstances of each particular case. See, *Id.* Furthermore, the first and second prongs may be considered as one due to their inter-relatedness; see *Burger King v. Rudzewicz*, 105 S.Ct. at 2183–2184; and the first two prongs may be met if the contractual dispute arises from a "substantial business contract with a corporation based in another jurisdiction." *First Nat. Bank v. Brewer*, 680 F.2d at 1126; *Texas American Bank v. Sayers*, 674 S.W.2d 36, 39 (Ky.App.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985).

A defendant may be said to have purposefully availed himself of the benefits of the forum state if he has either "deliberately" engaged in significant activities within a state or created "continuing obligations" between himself and the citizens of a forum. *Burger King v. Rudzewicz*, 105 S.Ct. at 2184. Moreover, jurisdiction may not be avoided merely because the defendant did not *physically* enter the forum state, so long as a commercial actor's efforts are purposefully directed toward residents of another state. *Id.* (citations omitted). Although territorial presence within a state by the nonresident may bolster an assertion of personal jurisdiction, "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications over state lines." *Id.*

■ Albeit National was present in this state in connection with negotiations to purchase the Valley View Medical Center, the plaintiff has failed to produce any evidence that its cause of action arose from these activities. In fact, negotiations between National and Valley View occurred nearly two months after the last purchase order executed by Info-Med. It is obvious that National's presence in Kentucky for negotiations with representatives of Valley View may not serve as a basis for personal jurisdiction in this action. See *Bowen v. Eastside Jersey Dairy*, 521 S.W.2d 822, 823 (Ky.App.1975).

■ However, even though National did not have physical presence in this state, National did create a "substantial connection" with this forum in satisfaction of the first two prongs of the test set forth in *Southern Machine Co. v. Mohasco*, supra.

The contract between National and Info-Med represented a substantial business venture involving the purchase of at least One Hundred Twenty-Four Thousand Four Hundred Seventy-Five Dollars ($124,475.00) and quite possibly an additional Four Hundred Ninety-Seven Thousand Nine Hundred Dollars ($497,900.00) worth of sophisticated computer hardware, software and programs. The proposed magnitude of the order caused Info-Med to immediately seek to increase its work force and locate supplies for the necessary equipment.

In addition, National "reached out" and created a continuing relationship with Info-Med as a result of their dealings. The nature of this transaction was not such that National merely placed an order and Info-Med filled it. Rather, Info-Med was committed to specially design the computer systems, provide transportation of the product to the "use" site, grant software licenses, supply personnel to train users, and, per the agreement, implement the most efficient business operation.[5]

It is clear that a contract between a resident and nonresident may not establish "minimum contacts" by itself.[6] *Burger King v. Rudzewicz*, 105 S.Ct. at 2186; *Hooks v. Hooks*, 771 F.2d 935, 945 (6th Cir.1985). However, in the case at bar, at least five contracts were formed in Kentucky by virtue of the execution of the purchase orders.[7] Moreover, the choice of law provision on each agreement indicates that National "purposefully invoked the benefits and protections of a State's [Kentucky's] laws for jurisdictional purposes"; *Id.*, 105 S.Ct. at 2187.

With regard to Kalson, the amount and cost of computer equipment he purchased were much less than that bought by National. However, the remainder of that which has been stated is equally applicable to him as well. In addition, when issues arose related to the alleged default, Info-Med avers that Kalson initiated numerous telephonic requests and conferences to Info-Med's Kentucky offices aimed at resolution of the dispute. This course of dealing between the parties demonstrates that Kalson believed that the decision-making authority of Info-Med was vested in Kentucky and not Alabama. *Id.*, 105 S.Ct. 2186, 2187. In light of the continued obligations of Info-Med to design the system, license users, transport the goods to the desired location, and provide training at Kalson's facility, the nature and quality of the relationship between Kalson and Info-Med may not be characterized as "random", "fortuitous", or "attenuated". See *Id.*, 105 S.Ct. at 2183 (citations omitted).

Defendants, National and Kalson, rely upon *Tube Turns Div. of Chemetron v. Patterson Co.*, 562 S.W.2d 99 (Ky.App. 1978), for the proposition that personal jurisdiction may not be had over them since Info-Med's agent or representative in Alabama solicited the sales and negotiated the transactions. In *Tube Turns*, the Kentucky Court of Appeals held that jurisdiction could not be exercised over a nonresident due to a single sale by a Kentucky seller where the initial contact between the buyer and seller was out of state and subsequent negotiations were by mail and telephone. *Id.* at 99. The Court reasoned that the nonresident buyer did nothing more than place an order in Kentucky and stated that the record did not indicate that the goods were specially manufactured; more than one order had been placed; the order

---

5. In its complaint, Info-Med avers that it provided on-site support for Kalson after initial installation of the computer systems and training. Given the fact that these computer systems were specially designed, it is likely that Info-Med may have also provided on-site operator support for National as well.

6. Neither may jurisdiction be based solely on negotiations between parties by telephone and mail when the outcome is an acceptance of a single order from the forum state. *Tube Turns Div. of Chemetron v. Patterson Co.*, 562 S.W.2d 99, 100 (Ky.App.1978).

7. The purchase orders provided that "a valid contract binding upon Info-Med comes into being upon, and not before, execution of this agreement by a fully authorized officer of Info-Med", and were signed by the President of Info-Med. Although National places great significance upon the assertion that it did not mail the agreements to Kentucky, this Court attaches little importance to this fact in view of the substantial business connection.

was particularly large; or that the order was part of a series of transactions. *Id.* at 100. However, the Court did state that the presence of one or more of the above-stated factors can justify exercising jurisdiction over a nonresident buyer. *Id.* (citation omitted). In the instant case, all of these factors are present with regard to National and, at least one, with regard to Kalson.

Having decided that National and Kalson purposefully established "minimum contacts" with Kentucky, it must now be determined whether the defendants' acts or the consequences of their acts had a substantial enough connection with Kentucky to make the exercise of jurisdiction over these defendants reasonable. This third prong focuses on the "extent of the forum state's interest and whether exertion of jurisdiction over the defendant is fair." *Texas American Bank v. Sayers,* 674 S.W.2d at 39 quoting *First Nat. Bank v. Brewer,* supra. Aside from other considerations, fairness may also be judged by whether the buyer (1) is an "active" or "passive" one; (2) could foresee a foreign suit, and (3) has physical contacts with the forum state. *Id.* However, when the first two prongs of the *Mohasco* test are met, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this requirement." *Id.*

It is a certainty that Kentucky has a "substantial interest in seeing that its residents get the benefit of their bargain." *First Nat. Bank v. Brewer,* supra. (citations omitted). Whether or not the effects of a breach of contract by both National and Kalson are readily quantifiable, the consequences are, nonetheless, real. *Texas American Bank v. Sayers,* 674 S.W.2d at 40 (citation omitted). The failure of either National or Kalson to honor their contractual commitments would result in a loss of revenue for Info-Med and may affect Info-Med's commitments to its employees and suppliers.

In view of the magnitude of the orders by National, and the business interests of both National and Kalson in securing for themselves the most efficient business computer systems specially designed for their particular use, their roles could hardly be characterized as "passive". Due

to the choice of law provision in both their contracts, Kalson's apparent recognition that the Info-Med office in Kentucky possessed decision-making authority and their refusal to make required payments in Kentucky, both Kalson and National could reasonably foresee being haled into court in Kentucky for breach of their contractual obligations. As stated earlier, the necessity of finding that defendants had actual physical presence within the forum state may be obviated if the nonresident defendants have "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Burger King v. Rudzewicz,* 105 S.Ct. at 2182 (citations omitted). Having already found that both National and Kalson established such a relationship, this consideration is also present. Accordingly, the Court finds that personal jurisdiction over the defendants in this forum is not unreasonable and does not offend the notions of fair play and substantial justice. See *Int'l. Shoe v. Washington,* 326 U.S. at 316, 66 S.Ct. at 158.

For the reasons set forth above, IT IS HEREBY ORDERED that defendants' motion for dismissal due to a lack of *in personam* jurisdiction is denied.