4 F.3d 993
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ghaleb F. HATEM, Plaintiff-Appellant,
v.
ARK OIL GROUP LIMITED, Aamir Raza Khan, and Delta Oil
Company, Defendants,
Harry S. Anderson and Deutsch, Kerrigan & Stiles,
Defendants-Appellees.
 No. 91-2251.
 United States Court of Appeals, Sixth Circuit.
 Sept. 8, 1993.
 
 Before: MARTIN, and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Dr. Ghaleb Hatem, a Michigan resident, sued, inter alia, Harry S. Anderson (Anderson) and the law firm of Deutsch, Kerrigan & Stiles (DKS) in a diversity action. The district court dismissed the suit on the grounds that the court had no personal jurisdiction. On appeal, we affirm the dismissal.
 
 
 2
 * In 1986, Hatem joined with Aamir Raza Khan, a Louisiana resident, in a partnership to profit from shipping Saudi Arabian crude oil. Anderson, in his professional capacity as a partner with DKS, represented Khan in the formation of the partnership.
 
 
 3
 During the course of the association between Hatem and Khan, Hatem wired a total of $450,000 to Khan through a DKS client trust account. Hatem made an initial capital contribution of $125,000 and a second, optional, contribution of $175,000. A later wire transfer of $150,000 was characterized as a personal loan from Hatem to Khan that Khan independently and personally solicited from Hatem.
 
 
 4
 Hatem claims that Anderson and DKS actively solicited money from him on behalf of the partnership, that they lent their authority and credibility to Khan to induce Hatem to send money, and that they took advantage of the fact that Hatem was in another state.
 
 II
 
 5
 In a diversity action, the law of the forum state controls. Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir.1991); Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir.1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1517 (1981). Thus, we turn to Michigan's long-arm statutes to determine whether the federal district court can exercise jurisdiction over defendants.
 
 
 6
 Michigan's limited personal jurisdiction[1] statute reads in relevant part:
 
 
 7
 Sect. 705. The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
 
 
 8
 (1) The transaction of any business within the state.
 
 
 9
 (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort....
 
 
 10
 M.C.L.A. 600.705. The statutes establishing limited personal jurisdiction over corporations (M.C.L.A. 600.715) and over partnerships (M.C.L.A. 600.725) include the same language as in 600.705(1) and (2).
 
 
 11
 The Michigan Supreme Court has construed Michigan's long-arm statutes to bestow the broadest possible grant of personal jurisdiction consistent with due process. Sifers v. Horen, 188 N.W.2d 623 (Mich.1971). Thus, we look to due process principles to determine whether Michigan's long-arm statutes can reach defendants.
 
 
 12
 To determine jurisdiction, we look at the quantity and quality of the contacts the defendants had with the forum state, whether there was purposeful availment of the protection of the forum state, and where the loss, if loss there was, occurred.
 
 
 13
 Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985), holds that random, fortuitous, or attenuated contacts with the forum state are insufficient to establish jurisdiction. While plaintiffs correctly note that Burger King does not require a person actually to enter the forum state to be subject to jurisdiction, as interpreted by this circuit it does require more than merely formalizing a partnership agreement. See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174 (6th Cir.1992); LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1300 (6th Cir.1989), cert. denied, 494 U.S. 1056, 110 S.Ct. 1525 (1990).
 
 
 14
 Appellees neither reached out to the forum state, nor anticipated a continuing relationship or obligation with a citizen of Michigan.[2] Despite Hatem's unsupported claims to the contrary, there is no evidence in the record that Hatem was actively solicited by DKS or Anderson or that he participated in the investment or partnership only as a result of their assurances.[3] Appellees were not the individuals soliciting Hatem and his money. Their contact with Hatem was at the behest of Khan, and consisted of ministerial duties. Jurisdiction is not created even when we take the evidence in the light most favorable to Hatem, that his decision to participate in the venture may have turned on his belief that the law firm was involved.[4] The fact that Hatem unwisely chose not to be represented by counsel before he invested $450,000 in a partnership in another state also does not confer jurisdiction.
 
 
 15
 DKS's and Anderson's contacts with Hatem and Michigan were both quantitatively and qualitatively limited. The documented contacts began only after Hatem and Khan formed their partnership, so Hatem could not have relied on any of their assurances in choosing to enter into the partnership. DKS and Anderson had no documented part in the relationship between Hatem and Khan prior to March 6, 1986, the date on which the partnership/trust between Hatem and Khan/Ark was established and memorialized by telegram. Second, appellees' function was limited to traditional attorney functions, such as drafting a formal partnership agreement under Louisiana law, and receiving Hatem's capital contributions in Defendants' client trust account, kept in the name of Ark Oil. Those contacts were brief, for a limited time, and for a strictly circumscribed purpose--they were not with the intent, purpose, or effect of creating ongoing business dealings in the state of Michigan.[5]
 
 
 16
 Although Hatem repeatedly claims there were numerous telephone calls exchanged between him and the defendants, those calls are irrelevant both because Hatem did not specify their time or content and because they would still be insufficient to confer jurisdiction. Some telephone calls between Anderson and Hatem were documented, but they all occurred after the partnership had already been created. Hatem's efforts to create jurisdiction by appending to his brief or affidavit the telephone bills of one of Hatem's Michigan co-investors also fail. The vast majority of those telephone calls were of exceedingly short duration and almost all of them were after the date of Hatem's money transfers. More importantly, however, all of the telephone calls were initiated by the Michigan investor, not by defendants, nor were they even between the parties at bar.
 
 
 17
 Hatem insists that we should infer ongoing two-way contact from the number of telephone calls. Perhaps so. But given that the calls were not from Hatem, and given that they were after the money had been transferred, even that inference does not help him.
 
 
 18
 Hatem also says that there was correspondence from appellees. Once again, he is partially correct. But once again, the majority of that correspondence was after the money transfers had been completed.
 
 
 19
 Hatem may well be correct that on the merits appellees' conduct will not withstand legal or moral scrutiny. But that means only that there may be a cause of action in another jurisdiction, such as Louisiana, not that we should confer jurisdiction in Michigan in violation of due process.
 
 
 20
 Even granting Michigan's interest in protecting its citizens from outside swindlers, these actions cannot confer jurisdiction. Appellees at no time availed themselves of the advantages of doing business in Michigan, as construed under the law. Their contacts with Michigan were purely incidental. They were Louisiana lawyers working for a local (Louisiana) client, and they were at most mailing or telephoning to Michigan because that is where the investor was.
 
 
 21
 Like the district court before us, we do not pass on the merits of Hatem's case. He could have been the victim of unscrupulous dealings by Louisiana residents. However, the proper forum in which to vindicate his rights is Louisiana, not Michigan. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Hatem admits that general jurisdiction does not lie
 
 
 [2]
 It is possible that Khan or his partnership might have done so, but they are not appellees here, and thus we need not decide that issue
 
 
 [3]
 Even though this case has been up on appeal previously, Hatem has been incapable of specifying the number of contacts, the dates of those contacts and the purposes of those contacts
 
 
 [4]
 Hatem argued below that he relied on DKS's stature: "... it has letterhead and it has a number of the names of the lawyers on it."
 
 
 [5]
 Appellees are attorneys with offices only in New Orleans and Slidell, Louisiana. They are not licensed to practice in Michigan