**GATEWAY PRESS, INC., Plaintiff,**

v.

**LEEJAY, INC., Defendant.**

No. Civ.A. 3:97–CV–271–H.

United States District Court,
W.D. Kentucky,
Louisville Division.

Sept. 16, 1997.

H. Edwin Bornstein, William J. Cooper, Jr., Ackerson, Yann & Miller, Louisville, KY, for Plaintiff.

Colin H. Lindsay, Steven M. Crawford, Brown, Todd & Heyburn, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to F.R.C.P. 12(b)(2). Plaintiff, Gateway Press, Inc. ("Gateway"), is a Kentucky corporation with its principal place of business in Louisville, Kentucky. Gateway is a provider of custom printing services. Defendant, LeeJay, Inc. ("Lee-Jay"), is a Massachusetts corporation with its principal place of business in Sharon, Massachusetts. Though LeeJay sells its bed and bath merchandise from stores in several Northeastern states, it does not own or operate any stores in Kentucky and is not registered to do business in Kentucky. Therefore, the question posed is whether LeeJay's activities as a non-resident buyer of goods are sufficient to support personal jurisdiction in this case. For the reasons stated, the Court believes that these facts fall within the category of those which do support the exercise of personal jurisdiction.

### I.

This case involves a contract dispute. It appears that the parties' business relationship had its origin in work done by Gateway for Croscill, Inc. beginning in February, 1996. The Croscill job required Gateway to produce an eight page insert for LeeJay's merchandise for placement in the Croscill catalog. The completion of this project required communications between Gateway and LeeJay concerning the contents and format of the insert. Subsequently, LeeJay requested a price quotation from Gateway in connection with the production of an upcoming merchandise catalog.[1] Gateway responded on

---

1. The supporting affidavits submitted by Gateway and LeeJay clash on this point. Linda Quirk's affidavit supporting LeeJay's Motion to Dismiss states that discussions regarding the possibility of

October 8, 1996, by quoting LeeJay a price of $ 169,750 for a custom printing job of 1.5 million units. LeeJay accepted this offer. The contract contained the standard terms and conditions governing Gateway's printing services, including shipment to buyer's place of business (F.O.B. Louisville) and passage of title upon delivery to the carrier. The contract also stated that it "had been completed at the office of the printer [Gateway]" and was "subject to the laws of Kentucky." The catalogs were custom designed to LeeJay's specifications, and all work was performed at Gateway's Louisville, Kentucky plant. On March 21, 1997, the Plaintiff filed suit in Jefferson Circuit Court alleging that LeeJay had failed to pay a $ 129,439.79 balance outstanding on the delivery of 1,228,267 printed and bound sale booklets with inserts. On April 28, 1997, LeeJay removed the case to the Federal District Court for the Western District of Kentucky on diversity grounds pursuant to 28 U.S.C. § 1441.

## II.

■ In order to determine whether personal jurisdiction exists over a nonresident defendant in a diversity action, this Court must apply the law of the state in which it sits, subject to due process limitations. *See Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir. 1980). Kentucky's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's ... [t]ransacting any business in this Commonwealth ..." K.R.S. 454.210(2)(a). It is well established that this provision permits Kentucky courts to exercise jurisdiction to the fullest extent permitted by due process. *See Info–Med, Inc. v. National Healthcare, Inc.,* 669 F.Supp. 793, 795–96 (W.D.Ky.1987). Accordingly, this Court will merge the question of how far Kentucky intended its long-arm jurisdiction to reach into the question of whether taking jurisdiction in this case would comport with the requirements of due process. *See First National Bank of Louisville v. J.W. Brewer Tire Company,* 680 F.2d 1123, 1125 (6th Cir. 1982). The plaintiff has the burden of establishing personal jurisdiction over the defendant. *See Welsh,* 631 F.2d at 438. However, when the court decides the jurisdictional issue based only upon the written submissions of the parties, the plaintiff meets this burden by making a prima facie case of jurisdiction. *Id.* In determining whether the plaintiff has presented facts sufficient to support a finding of jurisdiction, this Court will consider the pleadings and affidavits in the light most favorable to the plaintiff. *Id.* at 439.

## III.

■ In order to subject a nonresident defendant to personal jurisdiction without violating due process, the defendant must have "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court will employ the familiar three-part test followed in the Sixth Circuit for determining whether a nonresident defendant has the requisite minimum contacts:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968). This is not a "mechanical test," and a court applying it must "consider the jurisdictional facts of each case individually, to make judgments as to the substantiality of contacts

Gateway's production of LeeJay's October catalog originated at an August, 1996 product review conference in North Carolina. Donna Jacobi's affidavit submitted in opposition traces LeeJay's request to much earlier communications in connection with the eight page insert. She also claims that the request related to LeeJay's November and December catalogs. For the purposes of deciding this motion, these factual inconsistencies must be resolved in favor of the plaintiff. *See* discussion, *infra.*

with the forum state and the fairness and justice of subjecting a specific defendant to the in personam jurisdiction of the forum state." *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 225–26 (6th Cir. 1972). The "purposeful availment" prong of the *Southern Machine* test may be satisfied in a breach of contract case if the facts show that the nonresident defendant entered into a "substantial business contract" with a party in the forum. *See First National Bank of Louisville v. J.W. Brewer Tire Company*, 680 F.2d 1123, 1126 (6th Cir.1982); *In–Flight Devices*, 466 F.2d at 227; *Info–Med, Inc. v. National Healthcare, Inc.*, 669 F.Supp. 793, 796 (W.D.Ky.1987). In making this determination, the Court must consider the prior negotiations of the parties, the future consequences contemplated by the parties, the terms of the contract, and the parties' actual course of dealing. *See Burger King v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *Weldon F. Stump & Co. v. Delta Metalforming Co.*, 793 F.Supp. 157, 159 (N.D.Ohio 1992). No single factor is the overriding one. Rather, the Court's conclusion will emerge from a careful evaluation of all of the facts and circumstances of the parties' business relationship taken as a whole.

■ Considered together, the facts and circumstances surrounding the formation and performance of the contract at issue suggest that LeeJay purposefully availed itself of the benefits of transacting business in Kentucky. During the nine months preceding the formation of the contract, the parties worked together closely on an eight page insert for the Croscill catalog, laying the groundwork for the provision of future printing services by Gateway. At some point, the parties' business relationship developed to the point at which LeeJay contacted Gateway to request a price quotation for an upcoming catalog. Further negotiations ensued, culminating in a purchase order custom-designed to LeeJay's specifications and approval. In short, the course of dealing between the parties more closely resembled an "ongoing relationship" than an "isolated transaction." *Kerry Steel, Inc. v. Paragon Industries*, 106 F.3d 147, 151 (6th Cir.1997).

■ Against the backdrop of the parties prior dealings, the actual terms of the contract agreed to by both parties lead inexorably to the conclusion that LeeJay purposefully involved itself with the forum "through actions freely and intentionally done." *In–Flight Devices*, 466 F.2d at 228. Both the size of the contract and the place of performance are highly relevant factors in making the determination of whether a defendant's actions directed toward the forum were sufficiently purposeful. *Id.* at 227. LeeJay contracted to pay almost $ 170,000 for more than a million sale booklets to be designed and manufactured by a Kentucky corporation at its Kentucky plant. Moreover, the contract specifically provided that both title to the finished goods and the risk of loss would pass to LeeJay in Kentucky. Also relevant is the fact that LeeJay consented to have the contract governed by the laws of Kentucky. Such a choice of law provision in a contract, though not by itself determinative, supports the inference that LeeJay intended to avail itself of the benefits and protections of Kentucky law. *See Burger King*, 105 S.Ct. at 2187; *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1295 (6th Cir.1989); *Info–Med*, 669 F.Supp. at 793. In light of the parties' ongoing relationship and the express terms of their contract, LeeJay cannot truly claim that its connections to Kentucky were the result of "unilateral activity" on the part of Gateway or to characterize its contacts to Kentucky as "random," "fortuitous," or "attenuated." *Burger King*, 105 S.Ct. at 2183.

In light of the foregoing, little need be said about the second prong of the *Southern Machine* test. There can be no doubt that this action for breach of contract arises out of LeeJay's contacts with the forum, since the contract entered into by the Defendant "is necessarily the very soil from which the action for breach grew." *In–Flight Devices*, 466 F.2d at 229.

Applying the third step of the *Southern Machine* analysis, this Court concludes that exercising jurisdiction over LeeJay is not unreasonable. LeeJay seems to be more than merely a "passive purchaser" who was "unsuspectingly and unfairly dragged into a foreign forum." *M & W Contractors, Inc. v.*

*Arch Mineral Corporation,* 466 F.2d 1339, 1340 (6th Cir.1972). Moreover, given the magnitude of the purchase order and the Kentucky choice of law provision in the contract, LeeJay could reasonably foresee being haled into court in a foreign forum. *See Info–Med,* 669 F.Supp. at 798. This Court also must take into account Kentucky's "substantial interest in seeing that its residents get the benefits of their bargain[s]," particularly when the contract was to be performed within its borders. *First National Bank of Louisville,* 680 F.2d at 1126. Considering these circumstances, the interests of the forum state do outweigh any hardship that LeeJay, a large, interstate merchandiser, would suffer from having to defend this suit in a foreign forum.

While LeeJay's contacts with Kentucky are not overwhelming, they are consistently present throughout its business relationship with Gateway. They yield a consistent picture of minimal, yet purposeful contacts with the state. A change in only one of the circumstances here would not alter the result. Taken as a whole, LeeJay's actions constitute more than the minimal level of contact and purposeful availment. Accordingly, this Court finds that LeeJay sufficiently availed itself of the benefits and protections of the forum state to make jurisdiction reasonable in this forum.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved to dismiss this case for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2). Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion be DENIED.